Argued and submitted January 29, affirmed August 4, 2004

STATE OF OREGON,
*Respondent,*

*v.*

ANDREW PULVER,
aka Andrew Pulver, Jr.,
*Appellant.*

0111-53047; A117468

95 P3d 250

Appeal from Circuit Court, Multnomah County.

Michael McShane, Judge.

Jamesa J. Drake, Deputy Public Defender, argued the cause for appellant. With her on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Christina M. Hutchins, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Linder and Ortega, Judges.

LINDER, J.

**LINDER, J.**

Defendant stole two pairs of shoes from a retail store, which led to his conviction for theft in the second degree. *See* ORS 164.045. On appeal, the sole issue is whether evidence of the price of the shoes, in the form of testimony as to their price tags and electronic scans of their uniform product bar codes (UPCs), was inadmissible hearsay. Because we conclude that the evidence was not hearsay, we affirm.

The facts can be recounted briefly. Defendant was apprehended by a police officer after stealing two pairs of athletic shoes from a Fred Meyer store. The police officer turned the shoes over to a Fred Meyer security guard. At trial, the state called the security guard as a witness and asked him if he had determined the value of the shoes. Defense counsel, through questions asked in aid of objection, established that the security guard had, in fact, determined the shoes' value and did so by examining their price tags and by electronically scanning the UPCs on those price tags. Defense counsel then objected to the security guard's testimony in that regard as hearsay.

The trial court initially overruled defendant's hearsay objection. In doing so, the trial court concluded that the testimony about the shoes' price was hearsay, but that it was nonetheless admissible under *former* OEC 803(27) (2001), *renumbered as* OEC 803(28) (2003), the so-called "residual" hearsay exception. When the state rested its case, defendant renewed his objection by moving for a judgment of acquittal. In support of the motion, defendant again urged that the challenged testimony was inadmissible, that it should be disregarded, and that the state's case without that evidence was insufficient to prove the value element of theft in the second degree. *See* ORS 164.045(1)(b) (value of property must be "$50 or more but * * * under $200"). In ruling on defendant's motion, the trial court adhered to its conclusion that the testimony about the shoes' price was hearsay but rejected its initial ruling that it was admissible under *former* OEC 803(27). The trial court further concluded, however, that the security guard's testimony qualified as a lay opinion of the shoes'

value and could be based on hearsay. In response, defendant urged that, unlike expert opinion, lay opinion may not be based on hearsay. The trial court disagreed and denied the motion for judgment of acquittal.

On appeal, defendant renews the objections that he made below, arguing that the security guard's testimony about the price tags and the electronic UPC scans was hearsay, that it was inadmissible, and that, as such, it could not form the basis for a lay opinion as to the shoes' value. According to defendant, the record contains no other evidence to establish the value of the shoes and the trial court therefore should have granted his motion for judgment of acquittal. In response, the state renews the arguments that it made to the trial court, arguing first that the evidence of the price tags and electronic UPC scans was not hearsay and that, in all events, the evidence was admissible on any of several theories. The state also urges that other evidence in the case adequately established the shoes' value, rendering harmless any error in admitting the security guard's testimony. Because we conclude that the challenged testimony was not hearsay, we resolve the case on that predicate issue without reaching the parties' other arguments.

Under OEC 801(3), hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is not admissible except pursuant to other provisions of the evidence code. *See* OEC 802. Defendant's position in this case is that the price tags and UPC scans are out-of-court assertions by Fred Meyer that "the shoes cost a certain price and therefore had [that] value[.]"[1] As we amplify below, defendant misunderstands what the state must prove to establish the value of property in a theft prosecution and, as a consequence, he misunderstands the relevance of the price of an item offered for wholesale or retail trade.

---

[1] As defendant further argued at trial, his theory was that the price tags and UPCs were Fred Meyer's assertions of the value of the shoes and that the security guard had no personal knowledge of the shoes' value beyond what Fred Meyer, as a corporation, was asserting via the price placed on the tags and in the electronic scanning system. Defendant's theory, in effect, was that the guard had no first-hand knowledge of the shoes' value and was merely relating, second-hand, Fred Meyer's assertions.

Under ORS 164.045, theft of property is aggravated to the second degree if the state establishes that the stolen property had a value greater than $50. ORS 164.115 specifies how the value of an item is to be determined for purposes of a theft prosecution. As pertinent here, "value means the *market value* of the property at the time and place of the crime * * *." ORS 164.115(1) (emphasis added). In *State v. Callaghan*, 33 Or App 49, 58, 576 P2d 14, *rev den*, 284 Or 1 (1978), we construed "market value" to mean "the value in the market in which the goods were being traded, namely, the price at which they would probably have been sold in the regular course of business at the time when and place where they were stolen."[2] Of particular significance to the issue in this case, we held that "the price at which the wholesaler offers to sell [property] ordinarily reflects its market value." *Id.* Thus, we concluded that the state's evidence of value in *Callaghan*, which consisted only of the invoice price of the stolen item, was "sufficient to establish, prima facie, the market value of the property, which value may be rebutted by [the] defendant." *Id.*

To be sure, as defendant urges, nothing in *Callaghan* suggests that the defendant in that case objected on hearsay grounds to the invoice evidence. *Callaghan* nevertheless bears directly on our analysis here because of the construction we gave to the term "market value" and our rationale for concluding that evidence of the invoice price was sufficient to carry the state's burden to prove market value. Under *Callaghan*, to prove the market value of stolen wholesale or retail property in a theft prosecution, the state must establish the value of the property in trade, not the value placed on property by its owner. The asking price of an item is relevant to market value because—at least in a wholesale or retail market—it ordinarily reflects the price at which the item will probably be sold. In other words, the item's price provides *prima facie* proof of its value, not because the seller so asserts, but because the asking price is itself a basis from which to determine its value in trade.

---

[2] In so construing "market value," we adopted the construction given to the term in *People v. Irrizari*, 5 NY2d 142, 182 NYS2d 361, 156 NE2d 69, 71 (1959).

In this case, if the relevant fact to be proved were what Fred Meyer believed the shoes were worth, admission of the shoes' price for that purpose would be hearsay. But that was not what the state had to prove. The state had to prove the market value of the shoes, which, under *Callaghan*, required the state to produce evidence of the price at which the shoes likely would have sold in the ordinary course of business at the time and place of the theft. Admitted for that purpose, the shoes' prices, as revealed by the price tags and the scans of the UPCs, were not out-of-court assertions of the fact to be proved, but were themselves direct evidence of the relevant fact. The security guard related the price based on his personal observation of the price tags and of the price as revealed by electronically scanning the UPCs. Consequently, the security guard's observations were made firsthand, rendering him competent to testify to those observations. *See* OEC 602 (witness must have personal knowledge of a matter). The security guard's testimony relating the price information therefore was not hearsay. Likewise, to the extent that the testimony was a lay opinion of the shoes' value, that opinion was based on the security guard's personal observation of the prices, not on hearsay.[3]

We therefore affirm the trial court's admission of the testimony and denial of the motion for judgment of acquittal on that alternative ground. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659, 20 P3d 180 (2001) (explaining "right for the wrong reason" rationale for affirmance).

Affirmed.

---

[3] Whether the security guard's testimony was in the form of a lay opinion is less than clear. He was not asked if he had formed a personal opinion as to the value of the shoes, nor did he suggest that he had. He was asked only if he had "determined" the shoes' value. That form of the question arguably suggested nothing more than what his additional and clarifying testimony revealed—that he personally observed the prices of the shoes and was merely relating those observations. In all events, defendant did not object on the ground that the shoes' value was not a proper subject for lay opinion. Defendant objected only on the ground that the price tag information was hearsay and thus was inadmissible, either directly or as a basis for lay opinion.