576 April 9, 2025 No. 314

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

HANS MAARTEN ALMEKINDERS,
*Defendant-Appellant.*

Deschutes County Circuit Court
21CR51836, 21CN05089; A180898 (Control), A180899

Alison M. Emerson, Judge.

Submitted November 21, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Nora Coon, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Adam Holbrook, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

SHORR, P. J.

Affirmed.

**SHORR, P. J.**

In this consolidated criminal appeal, defendant appeals from a judgment of conviction in Case No. 21CR51836 for one count of fourth-degree assault constituting domestic violence, ORS 163.160, and one count of harassment, ORS 166.065.[1] He raises three assignments of error. For the reasons that follow, we affirm.

We recite in our analysis the facts necessary to explain our decision. Defendant's first assignment of error relates to the admissibility of testimony by the victim, L, regarding her broken ribs. L testified at trial that she and defendant were in an intimate relationship and she was temporarily staying at his home. She said that one night, after she vomited on defendant's bed while intoxicated, defendant pushed her off the bed and stomped on her ribs. She claimed that he also smacked her in the face with an empty wine bottle the next morning. L provided this additional testimony regarding the injury to her ribs:

"Q:  So what you're saying is you didn't want to cooperate with law enforcement at the time. You're here today. What changed?

"A:  I think—when I went to the hospital two days later and they took x-rays and a CAT scan, just, like, seeing that I had three broken ribs—

"[DEFENSE COUNSEL]:  Objection. Your Honor, this is hearsay.

"THE COURT:  She can testify to her own medical condition. She's not testifying to what anybody told her, so I'm going to overrule that objection. Go ahead.

"THE WITNESS [L]:  So after they did the x-rays, they found my 9th and 10th ribs were broken and then they did a CAT scan to—to see if my nose was broken. And thankfully it wasn't, but then they *** saw the 8th rib fracture and, um, it was, like, really then that I was, like, 'Wow. Like, this is, uh, this is like broken bones situation.'"

In defendant's first assignment of error, he argues that the trial court erred in allowing L to testify about her

_____

[1] Defendant does not challenge the judgment or sentence in Case No. 21CN05089.

broken ribs because it was inadmissible hearsay. The state's response parses L's testimony in two parts. In L's first statement, prior to defendant's objection, she described "seeing" her broken ribs on an x-ray. In L's second statement, following defendant's overruled objection, she stated that the medical professionals "found" broken ribs.[2] The state claims that the trial court did not err in admitting the first statement because it was not hearsay, but rather L's own observations. As to the second statement, the state argues that defendant failed to preserve his claim of error by not objecting again.

We review a trial court's decision to admit testimony over a hearsay objection for legal error. *State v. Hixson*, 307 Or App 333, 335, 476 P3d 977 (2020). OEC 801(3) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is generally inadmissible at trial unless it qualifies under an exception or exclusion from that general rule.[3] OEC 802.

Beginning with L's first statement, where she described "seeing *** three broken ribs," we agree with the state that that statement was not hearsay. L's statement expressed her direct personal observation of seeing her broken ribs on the x-ray scan, and did not relay an out-of-court statement made by another. *See, e.g.*, *State v. Pulver*, 194 Or App 423, 428, 95 P3d 250, *rev den*, 337 Or 669 (2004) (concluding that the witness's testimony regarding the price of stolen merchandise was based on his personal observations and was not hearsay). L's first statement did not constitute or necessarily contain a medical diagnosis or opinion. It merely conveyed that she, as a layperson, believed she saw bone fractures on

---

[2] In L's statement that "they found" broken ribs, she does not specify the identity of "they." However, "they" in context could only refer to either her doctors or other medical professionals who reviewed her x-rays. In either case, that would not change our analysis.

[3] "The party seeking the admission of hearsay bears the burden of proving that the hearsay satisfies the requirements of a hearsay exception." *Arrowood Indemnity Co. v. Fasching*, 369 Or 214, 222, 503 P3d 1233 (2022). The state never offered the evidence under any of the exceptions to hearsay, and we therefore do not consider whether an exception would apply.

We further note that, under OEC 602, a witness may only testify to those matters for which the witness has personal knowledge. Neither party on appeal raises any issue relating to OEC 602.

an x-ray scan. The first statement did not meet the definition of hearsay, and the trial court therefore did not err in overruling defendant's hearsay objection as to the first statement.

We turn next to L's second statement and whether defendant adequately preserved his claim of error as to that statement. As noted, the court overruled defense counsel's hearsay objection to L's first statement with the explanation: "She can testify to her own medical condition. She's not testifying to what anybody told her." When L continued by testifying that medical professionals "found" broken ribs, she was no longer testifying as to her personal observations or to her own subjective interpretation of her medical condition. L's second statement, unlike the first, expressly referred to "they" or third parties. Although a party is not required to continue objecting if doing so would be futile, *State v. Barajas*, 247 Or App 247, 251, 268 P3d 732 (2011), we are not convinced that an objection to the second statement would have been futile. Here, the court correctly overruled L's first statement. The court's explanation of why it overruled the first statement did not apply to the second statement, because L's second statement that medical professionals "found" broken ribs was not a personal interpretation of her medical condition. If defendant believed that the second statement relayed a third-party statement, he needed to object to preserve the issue for appeal. Because defendant did not object to the second statement, the trial court did not have "a meaningful opportunity to engage an argument on its merits and avoid error at the outset." *State v. Skotland*, 372 Or 319, 326, 549 P3d 534 (2024). In other words, defendant cannot rely on his objection to the witness's initial testimony, which objection was properly overruled, to carry over the objection or preserve an argument as to subsequent witness testimony that is qualitatively different. We therefore do not address defendant's claim of error as to L's second statement because we conclude that it is not preserved. We do not proceed to plain error review because defendant did not request it. *State v. Ardizzone*, 270 Or App 666, 673, 349 P3d 597, *rev den*, 358 Or 145 (2015).

We turn now to defendant's second assignment of error, in which he argues that the trial court plainly erred

in failing to intervene to correct an asserted misstatement made by the prosecutor during closing argument. The victim, L, had testified that defendant stomped on her ribs:

> "[THE WITNESS L]:   I mean, he pushed me off the bed and I landed on the floor. And then, just, stomped on me. So, um, I really don't—I don't—
>
> "[PROSECUTOR]:   Where did he stomp?
>
> "A:   On my ribs right here.
>
> "* * * * *
>
> "Q:   Okay. Did he stomp you once? More than once? What—try to describe in as much detail what actually occurred.
>
> "A:   It was more than once.
>
> "Q:   Was—was he stomping you just on your side, or was it—was it other places too?
>
> "A:   I just remember it mainly being on my side."

Defendant testified in his own defense, providing an alternative explanation for L's injuries. During recross-examination of defendant, the prosecutor asked him whether he would consider stomping on someone's ribs "an assault or assaultive behavior." Before defendant responded, defense counsel objected to the question as outside the scope of redirect, which the trial court sustained. Defendant was the last witness to testify. Following defendant's testimony, the trial court gave jury instructions, including instructing the jury to base their "verdict on the evidence and these instructions. The lawyers' statements and arguments are not evidence. If your recollection of the evidence is different from the lawyers' recollection, you must rely on your own memory." Then, in closing, the prosecutor claimed that defendant "knowingly engaged in assaultive conduct" because he "testified directly" that "the stomping of the ribs was assaultive conduct."

Defendant did not object to the prosecutor's argument. He argues on appeal that the prosecutor's misstatements during closing argument constituted plain error and require reversal under *State v. Chitwood*, 370 Or 305, 518 P3d 903 (2022). In *Chitwood*, the Supreme Court explained

that a trial court errs in failing to order a mistrial or issue curative instructions where "it is beyond dispute that the prosecutor's comments were so prejudicial as to have denied defendant a fair trial." *Id.* at 312.

If a defendant does not object to prosecutorial statements made in closing or move for a mistrial, a defendant is entitled to review only if we find plain error and are willing to consider it. *Id.* at 310-11. We must first consider whether the statement was improper. *Id.* at 312. Next, a prosecutor's improper statements amount to "legal error" reviewable as plain error only if, in consideration of all the circumstances, they are "so egregious that striking them or giving a curative instruction would have been insufficient." *State v. Durant*, 327 Or App 363, 365, 535 P3d 808 (2023). "In other words, prosecutorial statements that were improper but *curable* are not an appropriate subject of plain-error review, because, in such circumstances, the defendant was not denied a fair trial." *Id.* (emphasis in original). Moreover, a proper jury instruction is generally sufficient to cure any presumed prejudice from prosecutorial misconduct, and we assume that the jury could have followed a curative instruction unless there is an overwhelming probability that it could not have. *State v. Settlemier*, 333 Or App 179, 182, 551 P3d 995 (2024), *rev den*, 373 Or 212 (2025).

Here, the state acknowledges that the prosecutor misstated defendant's testimony. Defendant did not testify that stomping ribs would constitute assaultive conduct. We therefore readily conclude that the prosecutor's statement was improper. *See State v. Morehead*, 307 Or App 442, 449, 477 P3d 462 (2020) ("[C]ounsel is not free, in closing argument, to make statements of fact outside the range of evidence." (Internal quotation marks omitted.)).

Next, we turn to whether the prosecutor's improper statement meets the standard for plain error review, which requires that defendant demonstrate that, had he "made a motion for mistrial, the trial court would have erred, as a matter of law, in denying it." *Chitwood*, 370 Or at 312. That, in turn, "requires defendant to demonstrate that a curative instruction would have been insufficient in the situation." *State v. Dumdei*, 337 Or App 246, 253, 562 P3d 634 (2025).

In this case, the jury heard defendant's testimony and the objection to the prosecutor's question. The jury knew that defendant had not admitted that stomping ribs was assaultive conduct. If defendant had immediately objected to the prosecutor's incorrect assertion in closing argument, any confusion created by the misstatement could have been remedied by a curative reminder from the trial court. The prosecutor's misstatement was not repeated, and we have previously suggested that a "single misstatement" is more likely "straightforward and potentially easy-to-dispel." *State v. Smith*, 334 Or App 89, 95, 554 P3d 817 (2024). Also, although the prosecutor's incorrect statement was improper, the concept that stomping on someone's ribs—which the victim testified occurred and could be credited by the jury—constitutes assaultive behavior is arguably one of common sense. *See State v. Miller*, 327 Or App 740, 753, 537 P3d 191, *rev den*, 371 Or 715 (2023) (prosecutor's statement was improper but not egregious because the basic concept was "approaching the point of common knowledge"). Furthermore, the trial court's general instructions to the jury to rely on their own memory and not the lawyers' statements limited the risk of the misuse of the prosecutor's incorrect statement. *See Settlemier*, 333 Or App at 182 (presuming that the jury followed the court's instructions). In sum, we conclude that the prosecutor's statement, although improper, could have been adequately addressed by a curative instruction, and therefore does not meet the standard for plain error under *Chitwood*.

Finally, we do not reach defendant's third assignment of error, challenging a special condition of probation, because it is moot.

Affirmed.