No. 399 May 7, 2025 305

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MITCHELL JOSEPH ADAIR,
*Defendant-Appellant.*

Clackamas County Circuit Court
20CR06296; A180856

Todd L. Van Rysselberghe, Judge.

Submitted March 6, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Zachary Lovett Mazer, Deputy Public Defender, Oregon Public Defense Commission, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and E. Nani Apo, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

AOYAGI, P. J.

Affirmed.

**AOYAGI, P. J.**

For crimes committed against his wife's 12-year-old sister, K, defendant was convicted of second-degree sodomy, ORS 163.395 (Counts 1, 2, and 3); second-degree unlawful sexual penetration, ORS 163.408 (Count 4); and first-degree sexual abuse, ORS 163.427 (Count 5). He raises seven assignments of error on appeal, all of which are unpreserved. In his first four assignments, defendant claims that he was denied a fair trial as a result of prosecutorial misconduct in closing argument, such that he is entitled to a new trial under *State v. Chitwood*, 370 Or 305, 518 P3d 903 (2022). In his fifth assignment, he challenges the giving of a jury instruction on second-degree sodomy that contained outdated language. In his sixth assignment, he contends that the trial court should have *sua sponte* given a jury concurrence instruction on Count 2. In his seventh assignment, he argues that the trial court plainly erred by sentencing him "without affording him an opportunity for allocution." We reject each of defendant's arguments for the reasons discussed below and, accordingly, affirm.

## CLOSING ARGUMENT

Defendant claims that the prosecutor made four statements in closing argument that had the effect of denying him a fair trial. Defendant did not object to those statements at the time, so he requests plain-error review. *See State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000) ("Generally, an issue not preserved in the trial court will not be considered on appeal."); ORAP 5.45(1) (allowing discretionary review of "plain" errors). An error is "plain" when it is an error of law, is obvious and not reasonably in dispute, and is apparent on the record without having to choose among competing inferences. *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). Whether an error is plain is a question of law. *State v. Gore*, 280 Or App 624, 625, 380 P3d 1120 (2016).

In the specific context of prosecutorial misconduct in closing argument, for there to be plain error, it must be "beyond dispute that the prosecutor's comments were so prejudicial as to have denied defendant a fair trial." *Chitwood*, 370 Or at 312 (internal quotation marks omitted). That is, "a

defendant asserting plain error must demonstrate that the prosecutor's comments were so prejudicial that an instruction to disregard them would not have been sufficiently curative to assure the court, in its consideration of all the circumstances, that the defendant received a fair trial." *Id.* "[P]rosecutorial statements that were improper but *curable* are not an appropriate subject of plain-error review, because, in such circumstances, the defendant was not denied a fair trial." *State v. Durant*, 327 Or App 363, 365, 535 P3d 808 (2023) (emphasis in original). "That is important because, '[g]enerally, a proper jury instruction is adequate to cure any presumed prejudice from a prosecutor's misconduct.'" *State v. Babcock*, 327 Or App 358, 360, 535 P3d 345 (2023) (quoting *State v. Davis*, 345 Or 551, 583, 201 P3d 185 (2008), *cert den*, 558 US 873 (2009)).

Defendant first takes issue with the prosecutor's statement in closing argument that K's disclosure had not benefitted her but in fact put her in the position of having to go through grand jury and trial and tell "all of these little details about what happened to her," which "[n]o one would want to do," and "endure lengthy cross examination from [defense counsel] where he asked all these embarrassing [questions about the] search history on her phone." (There was evidence that K had viewed pornography on her phone.) Defendant challenges that statement, particularly the part regarding cross-examination, as an improper comment on his constitutional rights to trial and cross-examination and an improper appeal to emotion. The state responds that the prosecutor was permissibly commenting on defense evidence—specifically a defense expert's testimony that people can be consciously or unconsciously motivated to make untrue statements to obtain a benefit or "secondary gain" and that it is important to assess potential secondary gains when interviewing both adults and children—by arguing that K did not gain anything from disclosure but in fact only set herself up for uncomfortable and embarrassing situations.

We conclude that the statement was not obviously improper. The prosecutor was explicitly addressing the defense expert's testimony on secondary gain, including commenting on whether K had any motive to make up her

allegations or obtained any benefit from doing so. In context, it is unlikely that the jury would have understood that argument in a manner that would make it an improper comment on defendant's exercise of constitutional rights or an appeal to decide the case on emotions rather than evidence. *See State v. Perez*, 373 Or 591, 607, ___ P3d ___ (2025) (a prosecutor's statements were not obviously improper where "there was more than one way that the jury could have understood each of those comments, not all of which were impermissible"). We therefore reject the first claim of plain error.

Defendant next challenges three statements made by the prosecutor during rebuttal closing argument:

- "We talked about the presumption of innocence. It's an important critical concept in our constitutional system of justice. And *that presumption of innocence ends when you have received enough evidence to convince you beyond a reasonable doubt that the defendant committed these acts.* And the evidence in this case in total does that \*\*\*. You decide what evidence is important. You decide what the facts are in this case. I'm confident that when you do that, you'll find the defendant guilty beyond a reasonable doubt on all these counts." (Emphasis added.)

- "There's this discussion about a 12-year-old doing a search or two about writing about prompts for love. Heaven forbid a 12-year-old girl likes to write, does a search, writing prompts for love or for craving affection. That there was something about interested in older men, of which you know, we heard that she had this crush on an older boy. *And I hope the insinuation in some of that argument wasn't that [K] is somehow responsible or somehow invited this.* There was a touch on that during the trial and even if—even if you find that *offensive suggestion* to have any merit—which I would submit to you you shouldn't, these crimes would still be committed if there was sexual contact even if [K] somehow invited it, which she didn't. *And that's offensive.* That these crimes would still be committed even if." (Emphases added.)

- "The defendant is guilty of all these offenses beyond a reasonable doubt. And while *he won't say it, and he won't say it on the stand, he won't say it to Detective Bray, he won't say it in grand jury, he'll never say it, right? He'll never say to his community that 'I did these things.'* But

you can tell them. You can tell them he did these things. You can tell them that he's guilty of all of these charges beyond a reasonable doubt. And I'll ask that you do so." (Emphasis added.)

As to the statement regarding the presumption of innocence, we agree with the parties that it was improper. The presumption of innocence does not end with the receipt of evidence; rather, it "remains in place until deliberations are complete." *State v. Worth*, 231 Or App 69, 77, 218 P3d 166 (2009), *rev den*, 347 Or 718 (2010); *see also State v. Elliott*, 234 Or 522, 527, 383 P2d 382 (1963) ("Doubt is only removed when a jury returns a verdict of guilty, for the presumption of innocence is a disputable question which goes with the jury into the jury room for consideration."). At the same time, we agree with the state that, had defendant objected, the error would have been curable. The prosecutor described the evidence as needing to be "enough evidence to convince [the jury] beyond a reasonable doubt" and, immediately after making the challenged statement, emphasized how important it was that the jury look at all of the evidence while deliberating in the jury room. That mitigated any possible suggestion that the mere receipt of legally sufficient evidence during trial ended the presumption of innocence, and the trial court could have easily addressed any lingering possibility of confusion with a curative instruction, had defendant objected. A curable error is not a basis for reversal on plain-error review. *Perez*, 373 Or at 605; *Durant*, 327 Or App at 365.

As to the statement that any possible "insinuation" that 12-year-old K had invited sexual abuse by her sister's adult husband was "offensive," defendant argues that the prosecutor mischaracterized his evidence and argument in a way that "inevitably affected the jury's own perception of the competence and zealousness of defendant's trial counsel and, ultimately, of the strength of defendant's case." *State v. Knight*, 343 Or 469, 483, 173 P3d 1210 (2007). The state counters that the prosecutor was permissibly commenting on defense evidence and arguments. Ultimately, we conclude that the prosecutor's statement did not rise to the level of prosecutorial misconduct, at least on this record. Describing any defense argument as "offensive" always carries some

risk, in that prosecutors are to make substantive arguments about the evidence and "refrain from inflammatory remarks and personal commentary." *State v. Sperou*, 365 Or 121, 135, 442 P3d 581 (2019). Here, however, the prosecutor was responding to a hypothetical "insinuation" that he acknowledged might not have been intended, his comment that any such insinuation was "offensive" was brief, and, in the end, even if improper, it would have been curable had an objection been made.

Finally, as to the statement about what defendant "won't say" and will "never say," defendant argues that that was an improper comment on his right against self-incrimination and his right to trial. The state responds that it was a "proper argument about defendant's version of events" and contends that there is an important difference between a prosecutor impermissibly suggesting that a defendant's silence carries an inference of guilt and a prosecutor permissibly commenting on the testimony of a defendant who has chosen to testify. We agree with the state. On this record, the prosecutor's statement would have been understood as a comment on defendant's statements to the police and on the witness stand, not as a negative comment on defendant's exercise of his constitutional rights.

For those reasons, we conclude that the prosecutor's statements in closing argument did not deprive defendant of a fair trial and therefore do not provide a basis for reversal under *Chitwood*.

## JURY INSTRUCTIONS ON SODOMY

Defendant next raises two challenges to the jury instructions on sodomy.

In his fifth assignment of error, defendant contends that the trial court erred when it instructed the jury that a person commits second-degree sodomy by knowingly engaging in "deviate sexual intercourse" with a person under 14 years of age and that the state had to prove that defendant knowingly had "deviate sexual intercourse" with K. Defendant's trial ended on September 9, 2022. Defendant correctly points out that the legislature amended the sodomy statutes in 2017, replacing "deviate sexual intercourse"

with "oral or anal sexual intercourse."[1] *See* Or Laws 2017, ch 318, § 4 (amending ORS 163.395 to replace "deviate sexual intercourse" with "oral or anal sexual intercourse," effective January 1, 2018).

We reject that argument based on the invited error doctrine. Although the trial court plainly gave an outdated instruction, "a party who was actively instrumental in bringing about an alleged error cannot be heard to complain, and the case ought not to be reversed because of it." *State v. Kammeyer*, 226 Or App 210, 214, 203 P3d 274 (2009). Here, both parties asked the court to give the uniform criminal jury instruction on second-degree sodomy, UCrJI 1607, which, at the time of defendant's trial, had not yet been updated to reflect the statutory amendment. *Compare* UCrJI 1607 (Nov 2022 supp) (using the term "oral or anal sexual intercourse"), *with* UCrJI 1607 (Dec 2014 supp) (using the term "deviate sexual intercourse"). Moreover, in discussing the requested instruction with the court, defendant noted that "deviate sexual intercourse" was an "old-fashioned" term but disavowed any need for the court to do anything about it, stating that it was "not the Court's responsibility in this particular case or anybody's fault" but "just unfortunate" that the term was still being used in 2022. Having been instrumental in bringing about the error, defendant cannot now rely on that error to try to obtain reversal of his sodomy convictions.

In his sixth assignment of error, defendant argues the court should have given a concurrence instruction regarding Count 2, because Count 2 pertained to an alleged incident of anal intercourse in the living room, and there was evidence of more than one such incident. Specifically, the evidence at trial included (1) a video recording of a forensic interview of K that took place approximately three years before trial, in which K described defendant engaging in anal intercourse with her on the couch in the living room, stated that it had happened more than once and had been "[k]ind

---

[1] Indeed, the indictment used the updated language—defendant was charged with committing second-degree sodomy by knowingly engaging in "anal intercourse" with K (Counts 1 and 2) and by knowingly engaging in "oral intercourse" with K (Count 3). The court also gave other instructions that specifically referred to anal and oral intercourse.

of the same exact thing," and agreed that it was always on the couch in the living room; and (2) K's trial testimony, in which K described one incident of anal intercourse on the couch in the living room with her dog nearby. Defendant did not ask for a concurrence instruction for Count 2, so he requests plain-error review.

The state responds that any potential error in not giving a concurrence instruction on Count 2 does not qualify as plain error on this record. We agree. At trial, K testified to a single incident of anal intercourse in the living room. Although the forensic-interview video contained evidence of more than one such incident in the living room, everyone, including defendant, understood at the time of trial that Count 2 pertained to the incident in the living room to which K testified. That is particularly apparent from the parties' discussion of the concurrence issue with the trial court.

While discussing jury instructions, the court asked the state if it was going to request a concurrence instruction. That triggered a lengthy discussion of how to deal with concurrence, which the prosecutor opened by indicating a willingness to "defer" to at least some extent to defense counsel's "preference." The prosecutor noted that the parties' arguments would make clear that each incident occurred "at different times in different rooms" and suggested that the court could address concurrence either by giving a concurrence instruction or by adding language to the verdict form as to where each incident for each count occurred. The discussion then focused on the verdict-form option, which the court indicated was consistent with its past practice, and which defense counsel agreed was "helpful." The prosecutor ultimately proposed to modify the verdict form to add language specifying that Count 1 was the incident in the bedroom and that Count 2 was the incident in the living room. Defense counsel noted, and the prosecutor agreed, that Counts 1 and 2 were the only ones that needed such clarification. After collaborating on the exact language for the verdict form, the prosecutor asked defense counsel, "So are you good with that the way we have it?" Defense counsel answered, "Yeah, I think that's helpful." The trial court agreed to use the modified verdict form.

Under the circumstances, it is not obvious and beyond reasonable dispute that a concurrence instruction was necessary on Count 2. *See Vanornum*, 354 Or at 629 (stating the requirements for an error to be "plain"). Even if defendant was not so instrumental in bringing about the alleged error as to trigger the invited error doctrine, the trial court reasonably would have understood from the parties' arguments that everyone considered it obvious (and believed that it would be obvious to the jury) which "living room" incident was the basis for Count 2. We cannot say, on this record, that the trial court plainly erred in sharing that view and not *sua sponte* giving a concurrence instruction for Count 2. In any event, even if there was a plain error, we would not exercise our discretion to correct it, given the extensive discussion of the concurrence issue in the trial court, defendant's agreement with the verdict-form approach, and our assessment of the gravity of the error and the ends of justice.

## ALLOCUTION AT SENTENCING

Finally, in his seventh assignment of error, defendant asserts that the trial court plainly erred "when it sentenced defendant without affording him an opportunity for allocution." Specifically, defendant argues that it was plain error for the court to proceed immediately to sentencing after hearing the attorneys' arguments, without expressly offering him an opportunity to speak. The state counters that, absent any indication from defendant or his counsel that he wanted to speak, the court was free to proceed to sentencing without affirmatively inquiring whether defendant wanted to be heard. "Whether a court violated a defendant's right to allocution is reviewed for legal error." *State v. Juarez-Hernandez*, 333 Or App 794, 795, 553 P3d 1068, *rev den*, 373 Or 119 (2024).

Article I, section 11, of the Oregon Constitution provides that,"[i]n all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel." That right extends to "an ordinary sentencing hearing." *DeAngelo v. Schiedler*, 306 Or 91, 94, 757 P2d 1355 (1988). Thus, a criminal "defendant has the right, not only procedural, but constitutional, to be heard at sentencing"—which is described

as the right to allocution. *Id*.; *see also id*. at 93 n 1 ("In this context, 'allocution' refers to a convicted defendant's opportunity to speak before sentencing, although historically the 'allocution' referred specifically to the judge's solemn question to the prisoner at the bar whether the prisoner knew any reason why judgment should not be pronounced upon her."). The defendant may use allocution for purposes such as presenting mitigating circumstances, making statements relevant to existing sentences, identifying reasons for not pronouncing sentence, and making personal comments. *State v. Turnidge*, 359 Or 507, 518-19, 373 P3d 138 (2016); *State v. Rickard*, 225 Or App 488, 491, 201 P3d 927 (2009).

When a sentencing court is alerted that the defendant desires to make a statement before sentencing, it is a state constitutional violation to deny or unreasonably limit that right. *See, e.g.*, *DeAngelo*, 306 Or at 100 (holding that the sentencing court violated the petitioner's state constitutional right to be heard at her sentencing hearing by asking if she had anything to say but then quickly interrupting her, telling her that it did not want to listen to her anymore, and imposing sentence); *State v. Southards*, 172 Or App 634, 641-42, 21 P3d 123 (2001) (holding that the right to allocution was violated where "defense counsel tried to assert defendant's Article I, section 11, rights, but the trial court declined to hear from him[,]" and the "defendant was cut off after requesting to be heard by the sentencing court as to his sentence").

The question presented here is what happens when a sentencing court is *not* alerted that the defendant desires to make a statement before sentencing. Does the court have an affirmative obligation to ask whether the defendant wants to make a statement? In other words, must the defendant indicate a desire to speak in order to exercise the right to allocution, or is the court itself required to effectuate the right by offering an opportunity to speak? Based on existing case law, we conclude that the defendant must indicate a desire to speak in order to exercise the right to allocution.

In *State v. Fern*, the defendant assigned error to the trial court's alleged failure to allow him his right to allocution at his sentencing hearing. 110 Or App 185, 187, 822 P2d 1210 (1991). We rejected that claim of error as unpreserved,

reasoning that, absent some indication that the defendant wished to speak, there was nothing to review. *Id*. ("There is nothing in the record to indicate, in any way, that defendant wished to speak or was prevented from doing so. There is no error that we may review."). In doing so, we explained that *DeAngelo*—which involved a defendant who was cut off by the trial court while speaking at her sentencing hearing—"did not hold that a defendant may claim a denial of the right to speak without having objected in the sentencing court." *Id*.

The breadth of *Fern*'s holding is not entirely clear. Although it focuses on preservation and contains no substantive discussion of the allocution right, it at least implies that a defendant must do something to exercise the allocution right—or else there will be "no error that we may review." *Id*. If there is literally no error to review in the absence of a defendant's request to speak, it is difficult to see how there could be plain error in such circumstances. And, indeed, we recently relied on *Fern* to reject a plain-error claim regarding the allocution right where the defendant had not indicated a wish to speak. In *Juarez-Hernandez*, the parties' attorneys made arguments to the sentencing court, defense counsel concluded her argument by stating she had "nothing further," and the court proceeded to sentence the defendant. 333 Or App at 796. We held on appeal that the trial court did not plainly deny the defendant his right to allocution, because the "defendant did not in any way indicate to the court that he wished to speak."[2] *Id*.

Another relevant case is *State v. Ross*, 331 Or App 570, 546 P3d 960 (2024). There, as the trial court was finishing accepting the defendant's no-contest plea, the defendant indicated that he had a question for the court. *Id*. at 571-72. The court stated that he was free to ask a question, the defendant indicated that he would do so once the court was finished, and the court agreed that he could do so at an appropriate time. The court then found the defendant

---

[2] We recently cited *Juarez-Hernandez* for the proposition that "the right to allocution can be waived by a defendant's counsel." *Zyst v. Kelly*, 338 Or App 597, 638, ___ P3d ___ (2025). That is, in *Zyst*, we viewed defense counsel's "nothing further" statement in *Juarez-Hernandez* as a waiver of the defendant's right to allocution. *Id*.

guilty and sentenced him to 10 days in jail. *Id*. at 572. The defendant asked if he could "say what I've got on my mind to say now." *Id*. The court answered affirmatively. *Id*. The defendant (who seems to have appeared by video) stated that he was depressed, made some comments on jail, and then started cursing at the judge, at which point the court muted his feed. *Id*. at 571-73 & n 1.

On appeal, the defendant assigned error "to the trial court's decision to 'mute' him, arguing that the court violated his right to allocution." *Id*. at 571. We rejected that argument, which we seem to have treated as a preserved claim of error, explaining our reasoning as follows:

> "*At the time when an allocution would have been appropriate, defendant did not indicate that he wished to make an allocution*. He stated that he wanted to ask the court a question, to which the court was receptive; it told defendant he was 'welcome to ask.' Defendant instead told the court that his question could wait. The court then pronounced sentence. *At the time that it became clear that defendant wished to make a statement and not merely ask the court his question, sentencing had already occurred.*
>
> "*Although the court was not required to, the court allowed defendant to make a statement* until defendant began berating the court using abusive language. The court did not have to allow defendant to continue to speak because *the time for an allocution had passed*, and because defendant was speaking to the court in a way that the court had authority to curb."

*Id.* at 573 (emphases added).

It is implicit in our reasoning in *Ross* that a criminal defendant waives the right to allocution by not asking or trying to make a statement to the court before the court imposes sentence. *Ross* states that the trial court was "not required" to allow the defendant to make a statement where the defendant had "not indicate[d] that he wished to make an allocution" before the court imposed the sentence—and that, once the sentence was imposed, "the time for an allocution had passed." *Id*. *Ross* clearly puts the onus on the defendant to make a timely request for allocution, or else that right is waived.

In this case, neither defendant nor his counsel gave any indication that defendant wanted to make a statement before the court sentenced him. Given our prior decisions in *Juarez-Hernandez* and *Ross*, we conclude that the trial court did not plainly violate defendant's right to allocution by sentencing him without affirmatively offering him the opportunity to make a statement before sentencing.

Affirmed.