268 July 30, 2025 No. 676

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TILLA LORENA LUGO,
aka Tilla L. Lugo, aka Tilla Lorina Lugo
*Defendant-Appellant.*

Klamath County Circuit Court
20CR42906; A179310

Marci Warner Adkisson, Judge.

Submitted July 16, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Anne Fujita Munsey, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jonathan N. Schildt, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

Defendant appeals a judgment of conviction for attempted first-degree murder, ORS 161.405, first-degree assault, ORS 163.185, and unlawful use of a weapon, ORS 166.220. On appeal, she raises six assignments of error. In her first two assignments of error, defendant challenges statements that the prosecutor made during *voir dire*. In her third assignment of error, she challenges a statement that the prosecutor made during closing argument. In her fourth and fifth assignments of error, defendant challenges the denial of her mistrial motions. Finally, she assigns error to the denial of her motion for a new trial. As explained below, we conclude that even though the prosecutor made improper statements during *voir dire*, those statements did not deprive defendant of a fair trial. We further conclude that the challenged statement in the state's closing argument was not improper. Next, we conclude that the trial court acted within its discretion when it denied defendant's mistrial motions. Finally, we decline to review defendant's argument concerning her motion for a new trial because she did not base the motion on newly discovered evidence or juror misconduct. Accordingly, we affirm.

Because defendant's assignments of error implicate different standards of review, we address them separately and state the relevant facts in each section.

### VOIR DIRE

In her first two assignments of error, defendant makes arguments under *State v. Chitwood*, 370 Or 305, 518 P3d 903 (2022), arguing the trial court plainly erred when it "allowed the prosecutor" to make two statements "without correction during *voir dire*."

We may review an unpreserved error when it is "plain." *State v. Ortiz*, 372 Or 658, 664, 554 P3d 796 (2024). A "plain error" is "an error of law, obvious and not reasonably in dispute, and apparent on the record without requiring the court to choose among competing inferences." *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). As relevant here, "to satisfy the plain-error requirement that the alleged error be 'one of law,' a defendant must prove that

the prosecutor's comments were not just 'improper,' but 'so prejudicial as to have denied [the] defendant a fair trial.'" *State v. Perez*, 373 Or 591, 605, 568 P3d 940 (2025) (quoting *Chitwood*, 370 Or at 312).

On appeal, defendant challenges the following statements:

"[THE PROSECUTOR]:   And occasionally I get to talk to jurors after trials, and they say, '[W]*ell, I think he did it, but the state just didn't prove it.*' What's that mean?

"That means I didn't get you beyond a reasonable doubt. That means that the—*the prosecutor that was standing here on that day didn't explain to you that reasonable doubt is as soon as you say I think he did it, that that's guilty. Somehow, the tricky defense attorney was able to convince that juror*—

"* * * * *

"But if you decide at the end, when it comes time to vote, that that person is guilty, then *the verdict needs to be guilty, not, well, I think he did it, but I don't think the state proved it. As soon as you say, 'I think he did it,' that satisfies beyond a reasonable doubt. And if you think that a person committed a crime, the verdict is guilty.*"

(Emphases added.) In defendant's view, those statements "told the jury that the state does not have to *prove* that the defendant committed the crime, the jury just needs to believe that the defendant did it, regardless of the evidence presented by the state." (Emphasis in original.)

We conclude that the prosecutor's statements were improper because they "distorted the burden of proof by suggesting, incorrectly, what the jury must find in order to convict defendant." *Chitwood*, 370 Or at 316; *see also State v. Dumdei*, 337 Or App 246, 252, 562 P3d 634, *rev den*, 373 Or 736 (2025) ("[T]he prosecutor's statements during closing were improper statements that prejudiced defendant by distorting the burden of proof."). However, we observe that the trial court's general instructions, which the court gave after the parties' closing arguments, provided that "[t]he burden is on the state and the state alone to prove the guilt of * * * the defendant beyond a reasonable doubt." That general instruction "limited the risk

of the misuse of the prosecutor's incorrect statement." *State v. Almekinders*, 339 Or App 576, 582, 568 P3d 611 (2025). Therefore, we conclude that "an instruction clarifying the correct burden of proof would have been sufficiently curative" and that the statements here, which occurred during *voir dire*, did not deprive defendant of a fair trial. *Dumdei*, 337 Or App at 253; *see also State v. Durant*, 327 Or App 363, 365, 535 P3d 808 (2023) (explaining that "prosecutorial statements that were improper but *curable* are not an appropriate subject of plain-error review, because, in such circumstances, the defendant was not denied a fair trial" (emphasis in original)). The trial court did not plainly err.

## CLOSING ARGUMENT

In her third assignment of error, defendant argues that the following statement from the state's closing argument deprived her of a fair trial:

> "[THE PROSECUTOR]:   Here's the knife that was on the defendant. That's the one that cut [the victim's] neck open. Looks pretty simple and unassuming. That's also not an ordinary pocketknife. That's something more than just an ordinary pocketknife. An ordinary pocketknife will have a screwdriver, sometimes the corkscrews and stuff like that.

> "This, she wasn't carrying to do—this was not being carried for the purposes of using it as an ordinary pocket-knife. *She carried this to use on people.* And in this case, it was [the victim]."

(Emphasis added.) Defendant acknowledges that she did not object to the statement and requests plain-error review. As explained above, "to satisfy the plain-error requirement that the alleged error be one of law, a defendant must prove that the prosecutor's comments were not just improper, but so prejudicial as to have denied [the] defendant a fair trial." *Perez*, 373 Or at 605 (internal quotation marks omitted).

We conclude that, when viewed in context, the prosecutor's statement was not obviously improper "because there was more than one way that the jury could have understood" it. *Id.* at 607; *see also State v. Putnam*, 340 Or App 61, 62, 569 P3d 1014 (2025) ("[W]e review statements made by a party

during argument in context, not in a vacuum." (Internal quotation marks omitted.)) On cross-examination, the sergeant who found the knife in defendant's purse testified that he did not see any blood on the knife and that he did not know if police sent it to a forensic lab. Thus, the jury could have understood the prosecutor's statement—which occurred in the context of addressing defendant's first-degree assault charge—to argue that the knife that the sergeant had recovered was, in fact, the knife that defendant had used to commit the crime and that it was a "dangerous weapon" within the statutory definition of that crime. We therefore disagree with defendant's argument that the statement "constitute[d] an appeal to the jurors' outrage and fear" and we conclude that "it is unlikely that the jury would have understood that argument in a manner that would make it *** an appeal to decide the case on emotions rather than evidence." *State v. Adair*, 340 Or App 305, 308, ___ P3d ___ (2025).

Moreover, "even if the statement[] [was] improper, [it is] in the realm of statements that could have been adequately addressed by striking or a curative instruction. It follows that defendant has not established plain error." *Durant*, 327 Or App at 372; *see also Perez*, 373 Or at 605 ("[T] o be an error of law, the effect of the prosecutor's improper argument must have been to deny the defendant a fair trial, which required a defendant to establish that the trial court's only lawful option—had the defendant objected—would have been to declare a mistrial, because no curative instruction would have been effective.").

## MISTRIAL MOTIONS

In her fourth and fifth assignments of error, defendant makes a combined argument and contends that the trial court abused its discretion when it denied both of her mistrial motions.

"We review the trial court's denial of the motion for a mistrial for an abuse of discretion. A trial court abuses its discretion in denying a motion for a mistrial if the effect is to deny the defendant a fair trial." *State v. Reed*, 340 Or App 509, 511, ___ P3d ___ (2025) (internal quotation marks omitted).

On appeal, defendant argues that she was deprived of a fair trial because the state "injected" into its opening statement and the victim's examination statements that defendant said she had two knives in her purse.[1] Defendant contends that the statements prejudiced her because "the knife that was admitted as evidence at trial may not have been the knife that [the victim] was cut with." We address the denial of each mistrial motion in turn.

Defendant made her first mistrial motion after the state's opening statement and argued that the following statement deprived her of a fair trial:

"[THE PROSECUTOR]: [Defendant is] taken into custody. She's searched. She's found in possession of a knife. She actually states that she was in possession of two knives, but they only found one on her."

In denying the motion, the trial court explained that it understood that defendant did not "dispute that there was a knife recovered," that the "knife is going to be put in evidence," and that it did not think that the statement was "prejudicial to the point that [defendant] cannot get a fair trial."

Considering "the circumstances as a whole," we conclude that the trial court did not abuse its discretion when it denied that motion. *State v. Davis*, 345 Or 551, 583, 201 P3d 185 (2008). Notably, prior to opening statements, the trial court instructed the jury:

"[E]vidence consists of testimony of witnesses and exhibits that are admitted into evidence. Testimony is what a witness, who is sworn or affirmed to answer questions truthfully, says while being examined as a witness."

The court further instructed:

"After we come back from lunch, we will hear the opening statements in which the lawyers will outline the evidence as they expect it to be.

---

[1] In her opening brief, defendant argues that the "information that defendant said she had two knives in her purse was injected into the trial three times." However, defendant acknowledges that defense counsel elicited testimony from the victim about that "information" on one of those three occasions.

"After the opening statements, the evidence will be pre-
sented. At the conclusion of the evidence, the lawyers will
make their closing arguments to you."

We assume that the jurors "followed [those] instructions,
absent an overwhelming probability that they would be
unable to do so." *State v. Terry*, 333 Or 163, 177, 37 P3d 157
(2001), *cert den*, 536 US 910 (2002) (internal quotation marks
omitted). In addition, "opening statements pose less danger
to a defendant's right to a fair trial than when inadmissible
evidence is placed before the jury during trial because the
jury will ordinarily be able to limit its consideration to the
evidence introduced during the trial." *Davis*, 345 Or at 587-
88 (internal quotation marks omitted).

Further, even though the court stated that it would
be "happy to give" a curative instruction at defendant's
request, defendant did not request one. Defense counsel later
explained that he declined to request a curative instruction
because he thought it would have been "strategically stupid"
to do so. However, defense counsel's decision "does not mean
that a mistrial was necessary or that an instruction would
have been ineffective." *Reed*, 340 Or App at 513 (explaining
that "a curative instruction is generally adequate to rem-
edy any prejudice from a prosecutor's statements"). The trial
court did not abuse its discretion when it denied defendant's
first motion for a mistrial.

We further conclude that the trial court did not abuse
its discretion when it denied defendant's second motion for a
mistrial. Defendant based that motion on the victim's testi-
mony that defendant "said she had two knives."[2] In support
of that motion, defense counsel explained that the victim's
testimony was "exceedingly important" and that he "tried
to fix" that testimony on cross-examination with "lawyer-
ing." In denying the motion, the trial court made extensive
findings and determined that the statement was "not so

_____

[2] Defense counsel did not object to the victim's testimony and later cross-
examined the victim about that testimony. Outside the jury's presence, defendant
stated, "just—for the record, your honor, this is a mistrial." After a colloquy with
the court, defense counsel stated, "I guess we can just proceed," that he "will
table [the] motion for the moment," and that he "can just renew it *** at the end
of the trial." After the jury began to deliberate, the trial court heard the parties'
arguments concerning the second mistrial motion.

prejudicial in this case because of the totality of the evidence." Specifically, the trial court stated that it had "never seen more direct evidence" and explained:

"[T]he evidence that I saw and the evidence that came in on the record is clear that—that your client had a knife, that she put it in her bag, that that person then followed her and watched her on video to the restaurant where the police seized the bag, and they found a knife in the bag.

"So if there was another knife and she somehow discarded it, I didn't see that on the video. So there was either not two knives or—or that was the knife. I don't know. But the circumstantial evidence—it's actually even not circumstantial evidence. It's direct evidence. It's a videotape of your client."

We have reviewed the record and conclude that it contains ample support for the trial court's findings. At trial, the victim testified that defendant had cut his throat with a knife, and the trial court admitted into evidence a photo of a "large laceration" across the victim's throat as well as photos of the victim's bloody clothes and shoes. In addition, a bystander testified that he saw the victim backing away from defendant and that he heard the victim yell, "[Y]ou stabbed me." The bystander recorded most of the incident on his camera, and the trial court admitted that recording into evidence. As the trial court found, the recording showed defendant holding a knife. One of the arresting officers testified that he found a knife in defendant's purse, and the trial court admitted into evidence that knife as well as photographs of the knife and the purse.

Seeking a different result, defendant summarily argues that the "information" prejudiced her because "the knife that was admitted as evidence at trial may not have been the knife that [the victim] was cut with" and because she "raised some question about whether the knife that the state submitted was used to cut [the victim]." We reject those arguments. In addition to the ample evidence that defendant had used a knife to harm the victim, defendant did not dispute that she had done so. Rather, defendant stated during closing argument, "I think we all agree that [defendant] reached out and got him." Defendant further

argued that she "pull[ed] out a knife" because she was "getting ready to be attacked" and that if "[defendant] wanted [the victim] dead, he—he would have been dead." Moreover, the state did not mention the victim's testimony its closing argument or rebuttal argument. Considering the foregoing record as a whole, including the "overwhelming" "weight of the other evidence against defendant," *State v. Kendrick*, 31 Or App 1195, 1201, 572 P2d 354 (1977), *rev den*, 282 Or 385 (1978), we conclude that the "information" did not deprive defendant of a fair trial. *See State v. Hunt*, 297 Or App 597, 600, 442 P3d 232 (2019) ("For a trial to be fair, the verdict must be based on the evidence." (Internal quotation marks omitted.)). The trial court did not abuse its discretion when it denied defendant's second mistrial motion.

## MOTION FOR A NEW TRIAL

In her sixth assignment of error, defendant challenges the denial of her motion captioned "Motion in Arrest of Judgment and Request for a New Trial." In that motion, defendant argued that the knife that the trial court admitted into evidence lacked "fingerprints, DNA, or blood, linking [it] to either the defendant or the complaining witness" and that "the statements regarding the two knives" prejudiced her. The trial court denied the motion, determining that defendant did not point to any "new evidence in regard to the motion" and that the statements concerning two knives did not prejudice her.

We decline to consider defendant's arguments on appeal. "[T]he only claims on which a motion in arrest of judgment can be based are an absence of authority by the grand jury or the charging instrument's failure to state facts constituting a crime." *State v. Bockorny*, 124 Or App 585, 597, 863 P2d 1296 (1993), *rev den*, 318 Or 351 (1994) (declining to consider arguments concerning a motion in arrest of judgment that were unrelated to the grand jury's "legal authority" or the language of the indictment). In turn, the "denial of a motion for a new trial made after entry of judgment is not reviewable on appeal unless it is based on newly discovered evidence or evidence of juror misconduct." *State v. Grey*, 175 Or App 235, 245, 28 P3d 1195 (2001), *rev den*, 333 Or 463 (2002) (declining to review a motion for a new

trial that was not "based on newly discovered evidence or evidence of juror misconduct").

Because the "claims that defendant raised in her motion and that she argues on appeal *** have nothing to do with the legal authority of the grand jury that indicted her or the language of the charges set forth in the indictment," and do not allege newly discovered evidence or juror misconduct, we decline to review them. *Bockorny*, 124 Or App at 597; *see also State v. Tooley*, 265 Or App 30, 32, 333 P3d 348, *rev den*, 356 Or 575 (2014) ("Defendant's motion for a new trial was not based on jury misconduct or newly discovered evidence, as required for reviewability.").

Affirmed.