No. 839 September 24, 2025 615

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOHN RICHARD MOVICK,
*Defendant-Appellant.*

Washington County Circuit Court
21CR51117; A181709

Erik M. Buchér, Judge.

Argued and submitted August 22, 2025.

Andrew D. Robinson, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission. John Richard Movick filed the supplemental briefs *pro se*.

Jordan R. Silk, Assistant Attorney General, argued the cause for respondent. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

Defendant appeals a judgment of conviction for three counts of first-degree sexual abuse, ORS 163.427, and one count of luring a minor, ORS 167.057, stemming from the abuse of his stepdaughter, J. In four assignments of error, he challenges the trial court's failure to strike hearsay testimony as well as three statements in the prosecutor's closing argument. We affirm.

In defendant's first assignment of error, he argues that the trial court failed to strike testimony from the victim's father about J's disclosure of the abuse. Assuming *arguendo* that the trial court erred in not striking the testimony, any error is harmless on this record. *See State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (explaining that a trial court's error in admitting evidence is harmless if there is "little likelihood that the error affected the verdict"). In the challenged testimony, J's father testified that J first disclosed the abuse to him during a car ride with J's mother. According to defendant, that evidence was significant to the outcome because each separate disclosure demonstrated consistency in J's account of events and thus buttressed her credibility. However, J's mother testified as to the same conversation in substantial detail with no objection. Because the evidence of that specific disclosure was already before the jury, any failure to strike J's father's testimony as to the same conversation was harmless.[1]

Defendant next challenges three statements in the prosecutor's closing argument to which he did not object below.[2] In a plain error context, the preliminary question we must answer is whether defendant has shown that those prosecutorial comments are obviously "improper." *State v. Perez*, 373 Or 591, 606, 568 P3d 940 (2025).

---

[1] Defendant does not appear to argue that J's mother or father lacked credibility, such that both of their testimony was needed to corroborate the occurrence of the conversation in the car.

[2] In two *pro se* supplemental briefs, defendant identifies additional instances in which he contends that the prosecutor referred to facts not in evidence, misquoted defendant and other witnesses, engaged in improper vouching, made negative inferences, and misrepresented evidence. After reviewing the entirety of the opening, closing, and rebuttal arguments, as defendant requests, we are not persuaded, as we must be in a plain error context, that the only available remedy was to declare a mistrial. *State v. Smith*, 340 Or App 636, 641, 571 P3d 1131 (2025).

Defendant argues that two of the prosecutor's statements improperly shifted the burden of proof. Specifically, the prosecutor pointed out that defendant did not provide a reason that J would lie during his police interview and argued that "if you call somebody a liar then you should have a good reason to do that." In context, however, the prosecutor was not suggesting defendant had a burden to produce evidence, but rather was permissibly challenging defendant's credibility. The defense theory of the case was that J was making up the allegations. To challenge that theory, the prosecutor walked through defendant's statements during the police interview in great detail, including defendant's statement that J was a liar, observing that there was no good reason contained in the record as to why J would fabricate the allegations, and that the reason defendant proffered did not make sense. The prosecutor contrasted defendant's statements from the police interview with J's testimony and various disclosures and argued, based on that record evidence, that the jury should believe J. That is appropriate advocacy. *See State v. Slay*, 331 Or App 398, 404, 545 P3d 768, *rev den*, 372 Or 560 (2024) ("Advocacy, whether it be in the criminal or civil context, would be nearly impossible if attorneys were not able to comment on a witness's credibility, provided that their argument is grounded in the evidence in the record.").

Finally, defendant challenges the prosecutor's statement that J's behavioral issues, including an attempt to take her own life, and other forms of risk-taking behaviors following the abuse, were "exactly the type of behavior that happens when somebody experiences what [J] experienced." Defendant contends that there was no "psychological or other scientific evidence in this case regarding the effect of child sexual abuse on a victim's subsequent behavior" and thus the prosecutor's arguments referred to facts not in evidence. We disagree. In context, the statement came as part of a discussion of J's testimony about how she felt and what actions she took following the abuse, and it immediately followed the prosecutor quoting J's mother's testimony, in which she concluded that, once she learned of the abuse, J's risk-taking behaviors "all make[] sense." Taken in context, then, the prosecutor's statement was discussing the reasonableness of

J's mother's conclusion. Defendant even argued, too, that J's parents were not wrong to conclude that J's behaviors could be the result of her reported trauma—albeit in the context of claiming that J made it up to explain her behaviors. The prosecutor's statement, again, was grounded in evidence in the record, and as demonstrated by J's mother's reaction, common sense. *See State v. Sims*, 342 Or App 243, 248, ___ P3d ___ (2025) ("[T]he prosecutor did precisely what is expected of an advocate: persuade the jury that it should believe the state's theory of the case by responding to defendant's theory of the case with argument derived from the evidence in the record."); *State v. Almekinders*, 339 Or App 576, 582, 568 P3d 611 (2025) (prosecutor's statement during closing argument which incorrectly claimed defendant testified that stomping victim's ribs would constitute assaultive conduct, although improper, could have been adequately addressed by a curative instruction because "the concept that stomping on someone's ribs *** constitutes assaultive behavior is arguably one of common sense"); *State v. Miller*, 327 Or App 740, 753, 537 P3d 191, *rev den*, 371 Or 715 (2023) (determining that the prosecutor's argument as to "delayed disclosure" in child sex abuse is a "basic concept" and "is arguably approaching the point of common knowledge, or at least could be understood as something that could be referenced in broad terms in a case like this one").

Affirmed.