246 January 2, 2025 No. 7

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DOUGLAS DUMDEI,
aka Douglas Curtis Dumdei,
*Defendant-Appellant.*

Marion County Circuit Court
21CR44006, 19CR20681, 17CR60245;
A178396 (Control), A178397, A178398

Audrey J. Broyles, Judge.

Argued and submitted January 22, 2024.

Brett J. Allin, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Christopher A. Perdue, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Powers, Presiding Judge, Hellman, Judge, and Armstrong, Senior Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

In this consolidated criminal appeal, defendant appeals a judgment of conviction for fourth-degree assault, coercion, and menacing, and two judgments revoking his probation in case numbers 19CR20681 and 17CR60245. In his first five assignments of error, defendant argues that the prosecutor made prejudicial statements that deprived him of a fair trial by improperly shifting the burden of proof to the defense. Defendant contends that the improper statements constituted plain error and require reversal under *State v. Chitwood*, 370 Or 305, 518 P3d 903 (2022). In a sixth assignment of error, defendant argues that the court plainly erred by failing to include a complete instruction regarding substantial pain for fourth-degree assault. For the reasons explained below, we affirm.

The state charged defendant with strangulation, ORS 163.187, fourth-degree assault constituting domestic violence, ORS 163.160, coercion, ORS 163.275, and menacing, ORS 163.190. The case was tried to a jury. The victim, AP, who lived together with defendant and their children, testified at trial that defendant came home late one night and was upset. AP suspected that defendant had been at a bar and withdrawn money from her account, which started an argument. AP testified that defendant threw her on the bed, put both hands around her neck so that for four to five seconds she could not breathe, and it felt like defendant was going to kill her. AP testified that, after defendant released her, she went to the children's room, that the children were awake, and that defendant stood in the hallway blocking the stairway and mumbling things like "I can do this all night, if I have to kill you I will." AP testified that she eventually went downstairs where defendant continued to threaten her. AP called 9-1-1 and defendant left the home.

Defendant also testified at trial. His testimony was as follows: On the night in question, he came home from visiting friends, and AP accused him of infidelity and spending money from her account. After AP continued to accuse and harass him, he told AP that he was ending their relationship, and he left for his parents' house. As he was leaving, AP held up her phone to show him she was calling 9-1-1. He

never pushed or choked AP, never blocked her from leaving, and the children were not awake during any of the argument. In the days following the argument, AP frequently called and texted him seeking to repair the relationship.

On cross-examination, the prosecutor questioned defendant about those calls and texts:

"Q   [by the prosecutor]. I know that earlier in the case that we were talking about text messages and things that had been sent. Where are those, all these, this communication, where is that call log, where are those text messages?

"A   [by defendant]. Honestly, \*\*\* I don't know where my attorney did with any of those, I gave everything that I had-

"Q.   Fair to say that you don't have any evidence here today of all these text messages and phone calls that you're talking about.

"A.   Yes.

"Q.   Yes, you don't, right?

"A.   I do not."

Defense counsel did not raise any objections to the questions.

In his closing argument, defense counsel argued that the state failed to offer evidence of his whereabouts or to provide testimony from the children about the alleged assault. Specifically, defense counsel argued that the children were viable witnesses and would have provided "some important testimony," but AP "shut [the children] out of it." He also argued that the state failed to present evidence proving that his client was at a bar on the night in question.

In the state's closing rebuttal argument, the prosecutor argued the following:

"This is an interesting position we're in when the Defense chooses to put on a case, right, because they have the same subpoena power that the State has to bring in people and the Defense wants to make a big thing saying, hey, look, you know what, there were children in the home that the State could have brought in and had as witnesses. You know who else could do that if there was some smoking gun or kids saying, hey, this was totally peaceful and nothing

happened, you know who can do that? The Defense. \*\*\* so I'd suggest to you that you can look at the people that they didn't bring as much as you can look at the people that they chose to bring because they chose to put on a case and, you know, Defense wants to say, \*\*\* they never went to the bar to see, you know, what he did with the money on the bar tab, you know, whether he was, you know, gambling at a machine, whether was eating food, whether it was alcohol, again you know who can bring people in? Well, he was with friends that night according to him, right, friends, that's his description, you know who's not here? The friends that he was with. Right, that are going to say that yeah, no, he was with us, he wasn't at a bar, he was totally fine, he wasn't intoxicated, right?"

Defense counsel raised no objections. Following closing arguments, the trial court read instructions to the jury, including that the "burden is on the State and the State alone to prove the guilt of the defendant beyond a reasonable doubt." The jury acquitted defendant for the strangulation charge and found him guilty of the assault, coercion, and menacing charges.

On appeal, defendant argues that the prosecutor's questions and argument violated the presumption of innocence and improperly shifted the state's burden of proof onto him, thereby denying him a fair trial. Defendant acknowledges that he did not object or otherwise preserve the argument he now makes on appeal, but he contends that, under the framework set out in *Chitwood*, the statements constituted plain error and asks that we exercise our discretion to correct them.

Generally, issues that are "not preserved in the trial court will not be considered on appeal." *State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000). However, we have discretion to correct an error that is "plain." ORAP 5.45(1). An error is plain when it is an error of law, the legal point is obvious and not reasonably in dispute, and the error is apparent on the record without our having to choose among competing inferences. *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). It is a matter of discretion whether we will correct a plain error. *State v. Gornick*, 340 Or 160, 166, 130 P3d 780 (2006).

In the specific context of challenges to prosecutorial statements to which the defendant did not object, appellate

review is permitted if the defendant demonstrates that "it is beyond dispute that the prosecutor's comments were so prejudicial as to have denied defendant a fair trial," and an instruction from the trial court to disregard the comments "would not have been sufficiently curative to assure the court, in its consideration of all the circumstances, that the defendant received a fair trial." *Chitwood*, 370 Or at 312 (internal quotation marks omitted). "In other words, prosecutorial statements that were improper but *curable* are not an appropriate subject of plain-error review, because, in such circumstances, the defendant was not denied a fair trial." *State v. Durant*, 327 Or App 363, 365, 535 P3d 808 (2023) (emphasis in original).

Defendant challenges both the prosecutor's questions on cross-examination and his comments in closing argument that highlighted defendant's failure to produce supporting evidence, arguing that the questions and comments impermissibly shifted the burden of proof to defendant. It is well-established that the state carries the burden to prove all elements of a crime beyond a reasonable doubt. *State v. Mayo*, 303 Or App 525, 531, 465 P3d 267 (2020). Therefore, it is improper for a prosecutor to comment on a defendant's failure to present evidence at trial because such comments "may reasonably cause the factfinder to misapprehend and misallocate the burden of proof." *State v. Spieler*, 269 Or App 623, 641, 346 P3d 549 (2015).

Although the prosecutor's questions to defendant during cross-examination—"where is that call log, where are those text messages?"—appear to have been designed to draw attention to the lack of evidence supporting defendant's testimony, we have never held that asking a question in cross-examination is equivalent to impermissible burden shifting. Because we conclude that it is not "beyond dispute" that the prosecutor's questions on cross-examination were so prejudicial as to have denied defendant a fair trial, there is no plain error on this record as to those questions. *Chitwood*, 370 Or at 312.

Whether the prosecutor's comments during closing rebuttal were improper is a closer call. As the state argues, there are limited exceptions to the categorical prohibition

on commenting on a defendant's failure to present evidence. *Spieler*, 269 Or at 642. In some circumstances, "when the defense makes an argument that the state has failed to present certain evidence—with the implication that such evidence would have supported the defense or undermined the state's case—the prosecutor can respond by noting that the defense has the ability to produce it." *Id*. However, the response must be limited to noting that the defense also had the capacity to produce the omitted evidence. Put another way, "if defense counsel invites the factfinder to consider nonadmitted evidence as undermining the state's case, the prosecutor is entitled to respond, again, so long as that response comports with the proper allocation of the burden of proof." *Id*. A prosecutor's response that goes beyond the narrow scope of the exception is improper because it risks distorting the burden of proof.[1]

Here, defense counsel's arguments that the state failed to present testimony from the children or evidence of defendant's whereabouts permitted the state to respond. But the response the state used here was not a permissible one. The prosecutor's response went beyond "noting" that the defense also had the ability to produce the highlighted evidence. In particular, the prosecutor's argument that "I'd suggest to you that you can look at the people that they didn't bring as much as you can look at the people that they chose to bring" suggested that defendant had a burden to call witnesses or produce evidence. It therefore did not comport with the proper allocation of the burden of proof. Accordingly, the prosecutor's statements during closing were improper statements that prejudiced defendant by distorting the burden of proof.

As mentioned above, however, that the prosecutor made improper and prejudicial statements during trial does not establish plain error under the legal framework the Supreme Court set forth in *Chitwood*. Defendant must also demonstrate that, had he "made a motion for mistrial, the

---

[1] We note that the principles of *Cler* may also limit if and how a prosecutor may respond to a defendant's argument about unadmitted evidence. *See Cler v. Providence Health System-Oregon*, 349 Or 481, 489-90, 245 P3d 642 (2010) (explaining when an objection, rather than rebuttal argument, is the proper way to respond to a defense argument about missing evidence); *see also State v. Morehead*, 307 Or App 442, 449-50, 477 P3d 462 (2020) (concluding that the prosecutor's rebuttal argument exceeded what was permissible, in view of *Cler*).

trial court would have erred, as a matter of law, in denying it." *Id.* at 312. That requires defendant to demonstrate that a curative instruction would have been insufficient in the situation. Because we conclude that the prosecutor's statements could have been adequately addressed by a curative instruction, they do not meet the standard for plain-error review.[2]

"Generally, a proper jury instruction is adequate to cure any presumed prejudice from a prosecutor's misconduct." *Id.* at 311. Such is the case here. Unlike the circumstances in *Chitwood*, the improper comments did not "appeal[ ] to the jurors' moral sensibility" or encourage the jury to decide the case on an improper basis. *Id.* at 316-17; *see also State v. Smith*, 334 Or App 89, 95, 554 P3d 817 (2024) (denying plain-error review where the prosecutor's improper statement did not call to mind "bias, emotions, or other improper bases for deciding the case"). Instead, the comments were improper based on the possibility of confusing the jury as to who had the burden of proof. We therefore conclude that an instruction clarifying the correct burden of proof would have been sufficiently curative to assure the court that defendant was not denied a fair trial.

The context of the prosecutor's statements distinguishes this case from our recent opinion in *State v. Arena*, 336 Or App 291, ___ P3d ___ (2024), in which we determined that the prosecutor's improper statements were *not* curable with an instruction. As here, the prosecutor in *Arena* made improper arguments suggesting that the defendant had an obligation to call witnesses in support of his theory of defense. *Id.* at 292-93. However, in making those improper arguments, the prosecutor correctly acknowledged that the state bore the burden of proof, thereby "entangl[ing] the correct burden of proof with its mischaracterization of that burden." *Id.* at 298. In effect, the prosecutor redefined the burden of proof to include a requirement that the defendant

---

[2] As we observed in *State v. Smith*, 334 Or App 89, 95 n 1, 554 P3d 817 (2024), the current *Chitwood* framework presents analytical challenges, including insulating clear instances of prosecutorial misconduct from review on direct appeal and creating different plain error analyses for different types of plain errors without regard to the harm those errors cause. Despite those challenges, we recognize, as we did in *Smith*, that we are bound by *Chitwood* and have applied it in this case.

produce evidence. We determined that that "increased the likelihood that the jury was misled" and would have made it "nearly impossible" for the trial court to craft an effective curative instruction. *Id*.

By contrast, there was no such entanglement or redefining that took place in this case. Instead, the prosecutor's improper comments came in the context of responding to defense counsel's extensive closing arguments regarding the state's failure to produce evidence, including that the state failed to call the children as witnesses and present evidence of defendant's whereabouts. As we have explained, those arguments entitled the prosecutor to respond by noting that the defense also had the ability to present evidence. Although the prosecutor made additional statements that went beyond a permissible response, the prosecutor did not link his improper statement with the correct burden of proof or any legal standards. Instead, his response was limited to comments on factual matters. Because the improper statements were in the context of responding to defense counsel's argument and did not entangle the correct legal standard, it would have been possible for the trial court to craft a curative instruction that sufficiently minimized the possibility that the prosecutor's argument misled the jurors about the correct burden of proof.

Had defense counsel immediately objected to the prosecutor's improper closing argument statements, the trial court would have had the opportunity to give the jury a curative instruction about the permissible scope of the prosecutor's response that emphasized that defendant bore no burden to offer evidence. *See State v. Veatch*, 223 Or App 444, 460, 196 P3d 45 (2008) (whether the court gives the curative instruction immediately after a prejudicial statement "is a factor in the effectiveness of a curative instruction"). Such an instruction, immediately following the improper statement, would have been sufficient to minimize the "realistic possibility of confusing the jurors about the ultimate standard or burden of proof." *State v. Totland*, 296 Or App 527, 531, 438 P3d 399, *rev den*, 365 Or 502 (2019) (internal quotation marks omitted). Indeed, we understand the "curative instructions" contemplated in the current plain error

analysis to refer to instructions given immediately following the prosecutor's improper statements which directly address the misconduct. Accordingly, defendant has not established plain error as to the prosecutor's closing argument.

Finally, in his sixth assignment of error, defendant contends that the trial court plainly erred by failing to properly instruct the jury for the charge of fourth-degree assault, which required the state to prove that the victim suffered a physical injury. ORS 163.160(1)(a). "Physical injury" means that the victim suffered "impairment of physical condition or substantial pain." ORS 161.015(7). For pain to be substantial, the degree of pain must be "ample" or "considerable," and the duration cannot be "fleeting." *State v. Haws*, 297 Or App 812, 818, 444 P3d 1125 (2019). Defendant argues that the trial court's instruction was incomplete because it did not include the durational component—that pain is not substantial if it is fleeting. The trial court's jury instruction regarding fourth-degree assault was as follows:

> "The term physical injury means an injury that impairs a person's physical condition or causes substantial pain. An injury impairs a person's physical condition if it results in a reduction in the person's ability to use the body or a bodily organ or if it results in a reduction in a bodily organ's ability to perform its ordinary function. Pain is substantial if it is ample or considerable."

Defendant did not object to the trial court's instruction and asks that we review for plain error, a standard we have already described above.

The state argues that the trial court did not plainly error because it is not obvious that an instruction on the durational component for substantial pain was required. Defendant's testimony and argument at trial, the state contends, was that he never pushed or choked AP; he never challenged whether she suffered any injury, only that he did not cause it. We agree with the state's argument.

When instructing a jury, the trial court's obligation is to state "all matters of law necessary for its information in giving its verdict." ORCP 59 B.[3] A party is entitled to have

---

[3] ORS 136.330(1) makes ORCP 59 B applicable to criminal trials.

the jury instructed on the law that supports that party's theory of the case when (1) there is evidence to support that theory and (2) the requested instruction is a correct statement of the law. *State v. Roberts*, 293 Or App 340, 344, 427 P3d 1130 (2018) (internal quotation marks omitted).

The fundamental dispute in this case was one of credibility—did defendant take physical action towards AP (as the state alleged) or not (as he claimed)? In that circumstance, it is not obvious whether the duration of AP's pain was an issue that was before the jury. *See Haws*, 297 Or App at 818 (explaining that, in considering whether the durational component for fourth-degree assault should be included in the instruction, "we ask whether the issue of duration was before the jury"). Defendant made no arguments related to the duration of time that AP was in pain. Instead, he testified that he did not choke or push AP and argued that her testimony to the contrary was not credible. Similarly, the state did not base its case for substantial pain on the duration of the pain. Therefore, it is not obvious that an instruction about the durational component of substantial pain was required, and defendant has not established plain error.

Further, even if we assumed that the trial court did plainly err by failing to include the instruction, we would not exercise our discretion to correct the error. *See Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991) (a key factor guiding our discretion whether to correct an unpreserved error is "whether the trial court was, in some manner, presented with both sides of the issue and given an opportunity to correct any error"). In both cases that defendant now cites to support his argument, the defendants requested to have the durational component included in the jury instructions and were denied. *See Haws*, 297 Or App at 815 (trial court denying the defendant's request to include an instruction that substantial pain "excludes pain that is fleeting"); *Roberts*, 293 Or App at 343 (trial court denying the defendant's request to include an instruction that, to be substantial, "[f]leeting pain is insufficient"). Here, had defendant sought to have the durational component included with the jury instructions at the time of trial, the court could have easily considered it. *See State v. Inman*,

275 Or App 920, 935, 366 P3d 721 (2015), *rev den*, 359 Or 525 (2016) (explaining that "the ease with which any error could have been avoided or corrected should be a significant factor in an appellate court's decision whether to exercise its discretion to correct a plain, but unpreserved, error").

Affirmed.