134 July 23, 2025 No. 660

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ANTHONY LEE JOHNSON,
*Defendant-Appellant.*

Washington County Circuit Court
21CR22956; A180548

Beth L. Roberts, Judge.

Submitted June 24, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Francis C. Gieringer, Deputy Public Defender, Oregon Public Defense Commission, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Joanna L. Jenkins, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

JACQUOT, J.

Remanded for resentencing; otherwise affirmed.

**JACQUOT, J.**

Defendant appeals a judgment of conviction for two counts of menacing, ORS 163.190, and three counts of harassment, ORS 166.065, for incidents involving altercations with his then-girlfriend. In eleven assignments of error, he argues that the trial court erred when it ruled that if defendant introduced certain evidence, it would open the door for the state to introduce prior bad acts evidence; qualified a police officer as an expert witness; failed to order a mistrial based on improper prosecutor comments during closing and rebuttal; and imposed several special conditions of probation without announcing them on the record. We conclude that the trial court erred by failing to announce the special probation conditions in open court at sentencing and remand for resentencing. We otherwise affirm.

In his first assignment of error, defendant argues that the trial court erred when it ruled that if defendant offered a portion of a text message conversation for the purpose of impeaching the victim, it would open the door for the state to introduce evidence that had previously been ruled inadmissible, including some evidence of prior bad acts. The extent of that ruling is in dispute. Defendant argues that the trial court ruled that all evidence it had previously excluded would be admissible, but we do not understand that to be the case. We understand the trial court's ruling to be that it would admit evidence needed by the state to establish "context" regarding the text messages. As defendant notes, what that evidence would be is unclear, and it may have included some prior bad acts. Without more specificity about what evidence would have been admitted to establish "context," we cannot assess whether the trial court erred.[1]

Regardless, even were there an error that led to defendant deciding not to introduce the text messages, any error was harmless. The trial court offered other ways that defendant could use the inconsistencies in the victim's statements to attack her credibility. Indeed, it appears that

---

[1] To the extent that the trial court ruled as it did because it would not admit an incomplete conversation, that ruling was not necessarily error. Under OEC 106, "[w]hen part of a *** conversation or writing is given in evidence by one party, the whole on the same subject, where otherwise admissible, may at that time be inquired into by the other."

the jury did not find her credible, seeing as defendant was acquitted of all charges that relied exclusively on her credibility, such as the witness tampering charge for which the allegedly erroneously excluded evidence was relevant. He was convicted only of those charges to which he had admitted to engaging in at least some of the alleged conduct. Defendant was able to impeach the victim, and any potential error in the trial court's ruling that defendant offering the text messages would open the door to other evidence was harmless.

In his second assignment of error, defendant argues that the police officer that testified regarding the "circle of abuse" and counterintuitive victim behavior was not qualified to do so. We review whether a witness is qualified to testify as an expert for legal error. *State v. Wagner*, 319 Or App 399, 401, 509 P3d 731, *adh'd to as modified on recons*, 321 Or App 79, 515 P3d 402 (2022), *rev den*, 370 Or 714 (2023). We conclude that "the trial court correctly determined that [the officer] had sufficient training and experience to testify about counterintuitive victim behavior and cycles of violence." *Id.* at 408. The officer had extensive experience and training in domestic violence cases, and he did not provide any scientific testimony. Given our decision in *Wagner*, the trial court did not err in qualifying him as an expert witness.

In his third assignment of error, defendant argues that "[t]he trial court plainly erred when it failed to order a mistrial when the prosecutor's improper comments during closing and rebuttal argument denied defendant a fair trial." We have discretion whether to review unpreserved arguments for plain error. *State v. Vanornum*, 354 Or 614, 630, 317 P3d 889 (2013). "For an error to be plain error, it must be an error of law, obvious and not reasonably in dispute, and apparent on the record without requiring the court to choose among competing inferences." *Id.* at 629.

"[A]n unpreserved challenge to prosecutorial statements must demonstrate that the statements were so prejudicial that they deprived defendant of a fair trial"; that is, "if the defendant had made a motion for mistrial, the trial court would have erred, as a matter of law, in denying it." *State v. Chitwood*, 370 Or 305, 312-14, 518 P3d 903 (2022).

Defendant identifies three statements made by the prosecutor during closing and rebuttal that he argues were improper. He argues that the statements were improper for three reasons: "(1) they improperly shifted the burden to defendant; (2) they urged the jury to decide the case on an improper basis; and (3) they provided the prosecutor's opinion on the credibility of defendant and his mother."

First, the prosecutor commented on defendant's mother's testimony that defendant was with her when one of the incidents was alleged to have occurred. The prosecutor stated that defendant did not tell law enforcement that he was not at the scene at the time of his first interview, the day after the alleged incident:

"He told Deputy Lowery *** on January 10th that he had been at [the victim's] house on January 9th, that she had spat on him and that he left because he doesn't trust cops.

"Fair enough. But then what he told you today was, 'Oh, I actually—I wasn't even there on the 9th. Instead I was at my mom's house. And, you know, Deputy Lowery just—he got confused. He got it wrong, even though he has no reason to do that. I was at my mom's house.'

"The defendant did not tell Deputy Lowery about the earring. He did not tell Deputy Lowery about the necklace, did not tell Deputy Lowery that he wasn't there. He didn't tell him any of those things. Instead, he shows up here today, spins that yarn and has his mom get on the stand.

"The best he could come up with was his mother, who says, 'I remember him being there into the evening. And I remember it being 7 o'clock.' Keep in mind this is January in Oregon, when it gets dark at like 4:00.

"Into the evening in January is very different than into the evening in July, when it's light 'til 10:00. So, ladies and gentlemen, give her testimony the weight that you think it should deserve, [given] that she doesn't want her baby boy to get in trouble."

Defendant argues that the statement "the best he could come up with was his mother" confused the burden of proof and placed it upon defendant to produce "other, more credible witnesses." We agree that the comment was improper

in that it suggested that defendant had a burden to call other witnesses. *See State v. Dumdei*, 337 Or App 246, 251, 562 P3d 634, *rev den*, 373 Or 736 (2025) ("It is improper for a prosecutor to comment on a defendant's failure to present evidence at trial because such comments may reasonably cause the factfinder to misapprehend and misallocate the burden of proof." (Internal quotation marks omitted.)). However, the statement was not egregious such that a curative instruction reminding the jury that defendant holds no burden of proof would have been insufficient, and it would not have been an abuse of discretion for the trial court to deny a motion for a mistrial based upon the statements.

He also argues that the statement that defendant was "spin[ning] that yarn" improperly commented on his credibility. In context, the jury would have understood the prosecutor to be arguing about the credibility of the evidence as related to defendant's theory of the case. The prosecutor grounded the statement regarding defendant's testimony in evidence in the record, namely that defendant had already told a deputy that he was at the victim's house on the day in question. That was a permissible comment on his credibility. *See State v. Slay*, 331 Or App 398, 40405, 545 P3d 768, *rev den*, 372 Or 560 (2024) ("Advocacy, whether it be in the criminal or civil context, would be nearly impossible if attorneys were not able to comment on a witness's credibility, provided that their argument is grounded in the evidence in the record. *** [T]he prosecutor did not offer a personal opinion of [the defendant]; instead, [the prosecutor] permissibly argued for why [the defendant's] credibility should be questioned given the evidentiary record.").

Second, the prosecutor commented on the reason that the victim's statements were inconsistent:

> "And that, ladies and gentlemen, is why, again, the explanation that [the victim] went through a traumatic event on January 9th, which, again, is uncontradicted, with the exception of the defendant's mother trying to say that he was with her that day, even though he told Deputy Lowery he was at the house with [the victim]."

Defendant argues that the prosecutor's reference to the victim's testimony as "uncontradicted" shifted the burden

of proof to defendant to produce witnesses other than his mother. However, a proper curative instruction would have cured any potential impropriety, had defendant objected.

Third, defendant argues that the prosecutor suggested that defense counsel had done something improper while questioning the victim on inconsistent statements she had made:

> "Did [defendant] have the opportunity to tell him everything that happened? He did. And what [defendant] chose to tell him was 'She spit food on me, and I left.' And the defense wants to harangue [the victim] for saying something happened, telling another officer she doesn't remember a knife and then saying something happened.

> "Ladies and gentlemen, [defendant] is even more inconsistent, where he says nothing happened and then he says, 'well, what she said happened did happen in part, but it was only because I was responding what she did to me, which I never told anyone else.'

> "That's a demonstration of inconsistency. And the difficulty there is that her inconsistency is entirely explained by the traumatic event she experienced[.]"

Defendant focuses on the prosecutor's use of the word "harangue" and argues that the comment urged the jury to draw a negative inference from his exercising his right to confront the victim, and that it disparaged defense counsel. However, when viewed in context, the jury would have understood the prosecutor to be rebutting the defense argument that the victim was not credible due to her inconsistent statements and commenting on how the inconsistencies in defendant's statements are greater than the inconsistencies in the victim's, rather than as an attack on defense counsel personally or defendant's right to confront his accuser. Absent legitimate grounds to object to counsel's method, prosecutors should avoid using language such as "harangue" when describing defense questioning of a witness, but the statement, in context, did not deny defendant a fair trial.

We also reject defendant's contention that the statements, taken together, deprived him of a fair trial. Each of the statements, to the extent that they were improper, could have been cured with a curative instruction and, even

collectively, were not so egregious as to deny defendant a fair trial.

Finally, in his fourth through eleventh assignments of error, defendant argues that the trial court erred when it imposed certain special conditions of probation without announcing those conditions in open court and used the shorthand term of "domestic violence package." The state concedes that under our decision in *State v. Priester*, 325 Or App 574, 581, 530 P3d 118, *rev den*, 371 Or 332 (2023), the trial court erred. We accept that concession and remand for resentencing.

Remanded for resentencing; otherwise affirmed.