No. 736		August 20, 2025		625

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

GREGORY PAUL WILSON,
*Defendant-Appellant.*

Deschutes County Circuit Court
21CR35481; A179048

Walter Randolph Miller, Jr., Judge.

Argued and submitted June 17, 2024.

David Sherbo-Huggins, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, Lagesen, C. J., and Joyce, Judge.*

LAGESEN, C. J.

Reversed and remanded.

Aoyagi, J., dissenting.

_____
* Lagesen, C. J., *vice* Jacquot, J.

## LAGESEN, C. J.

While in Redmond for a conference, defendant and three people—CG, CH, and KB—got into a fight behind a bar where they'd all been drinking. In the course of that fight, defendant stabbed each of the others. Based on that conduct, a jury found defendant guilty of three counts of second-degree assault—one for each of the three victims—and also found him guilty of three counts of unlawful use of a weapon (UUW). In so doing, the jury found that defendant had not been acting in self-defense. The trial court merged the guilty verdicts pertaining to each distinct victim and entered a judgment of conviction for three counts of second-degree assault. On appeal, defendant challenges (1) the trial court's failure to acquit him on the counts pertaining to KB; (2) the trial court's decision to admit evidence of defendant's prior convictions; and (3) the trial court's handling of an improper comment by the prosecutor about why people stand up for the jury and the judge. Defendant also contends that the prosecutor made numerous improper remarks during closing argument that warrant reversal on plain-error review. For the reasons that follow, we either reject or need not reach the bulk of defendant's challenges but conclude that plainly impermissible closing arguments by the prosecutor denied defendant a fair trial and reverse and remand for that reason.

We provide a brief overview of the facts, before turning to the questions presented for our review. A group of people visiting Redmond in connection with a conference went to the Tumble Inn for a final drink after other bars had closed. That group included, among others, Dan Smith, who was wearing a polo shirt with a Washington State Cougars logo. CH, CG, and KB were also drinking at the Tumble Inn. CG, who was wearing American flag overalls without a shirt, is a fan of the University of Washington Huskies. When CG saw Dan Smith's shirt, he started making negative comments about the Cougars. The conference group did not stay at the Tumble Inn for long, opting to return to the hotel after 30 minutes or so.

Upon returning to the hotel, the group encountered defendant coming out of the front door and recounted their encounter with CG to defendant. At some point during the

conversation at the front door, defendant uttered the words "Dan, Dan, I need your knife." Defendant and Dan Cline then went to the Tumble Inn and ordered beers, but the bartender took them away after noticing how intoxicated they were. Defendant left the bar and waited outside for Dan Cline. Around the same time, CG, CH, and KB left the bar. CH and defendant bumped into each other and CH told defendant that he was in the way. Although CG later denied it, according to defendant CG then said "[H]e's the only [n-word] here. He should get the hint."

Defendant then followed CG, CH, and KB around the corner into the parking lot; according to defendant, it was to address CG's remark, which left defendant feeling "degraded and dehumanized. I felt like this is America. I could be anywhere I want." Defendant yelled "Hey, Butterbean" at CG because CG's outfit resembled that worn by the professional wrestler, Butterbean. The situation escalated from there. CH put his hands on defendant, things got pushy, which led to them punching each other. From there, stories varied as to what happened. CG and KB became involved, defendant used his knife, but KB ultimately was able to take it away. CH, CG, and KB all ended up with knife wounds. Defendant was kicked in the head and suffered a range of injuries himself. Police responding to the incident found that all involved were highly intoxicated. This case followed.

*Denial of motion for judgment of acquittal to the counts pertaining to KB.* With respect to KB, Count 3 of the indictment alleged that defendant committed second-degree assault, ORS 163.175, because he "did unlawfully and knowingly cause physical injury to [KB] by means of a dangerous weapon, to wit: [a] knife, by stabbing [KB]." Count 6 of the indictment alleged further that defendant committed UUW, ORS 166.220(1)(a), against KB because he "did intentionally attempt to use, carry or possess with intent to use unlawfully against [KB], a knife, a dangerous weapon."

At trial, the evidence was that defendant stabbed KB in the hands and in the heel after KB intervened in the altercation between defendant and CG. Defendant moved for judgment of acquittal on the counts pertaining to KB on the ground that, in defendant's view, the evidence

was insufficient to permit the jury to find that defendant knowingly caused physical injury to KB for purposes of the assault charge and, likewise, insufficient to show that defendant intended to use the knife unlawfully against KB, for purposes of the UUW charge. Defendant did not contest the sufficiency of the evidence with respect to any other element of either charge. The trial court denied the motion.

In his first and second assignments of error, defendant assigns error to the denial of his motion for judgment of acquittal with respect to each charge, reiterating his argument that the evidence was insufficient to find that he had the mental state required to commit those offenses. We review by viewing the evidence in the light most favorable to the state and determining whether that evidence "would allow a reasonable factfinder to find the element or elements of the crime put at issue by the motion proved beyond a reasonable doubt." *State v. Leahy*, 318 Or App 849, 850, 509 P3d 699, *adh'd to as modified on recons*, 320 Or App 772, 513 P3d 625, *rev den*, 370 Or 602 (2022).

Here, the evidence presented to the jury would permit it to make the necessary findings. KB testified that, "as soon as he" grabbed defendant's hand, defendant "started trying to twist and turn the knife and cut my hands to get me off of him." That description of the nature of defendant's movement of the knife in injuring KB's hands would permit a reasonable factfinder to find that defendant acted knowingly and intentionally to cause injury to KB unlawfully.

Arguing for a different result on appeal, defendant contends that the evidence regarding the injuries to KB's hands is insufficient to support a finding that KB suffered a "physical injury" for purposes of ORS 163.175; therefore, defendant argues that the assault conviction can stand only if there was evidence sufficient to support a finding that defendant had the required mental state with respect to the injury inflicted on KB's heel. Defendant contends that the evidence is insufficient in that respect because KB himself testified that he did not know how he got the injury to his heel and suspected it occurred when defendant was flailing around. In the trial court, however, defendant's motion for judgment of acquittal did not put at issue the sufficiency

of the evidence as to the physical injury element of second-degree assault and, more to the point, never put at issue the question of whether the injuries to KB's hand qualified as "physical injury" for purposes of ORS 163.175. Accordingly, to the extent defendant argues on appeal that the state had to show with particularity that defendant knew and intended that the conduct resulting in the heel wound was assaultive in nature, that argument is not preserved, and we do not reach it for that reason.

*Prosecutor's remarks in closing argument.* Defendant's final seven assignments of error, which are supported by combined argument, present unpreserved challenges to seven remarks that the prosecutor made in closing argument and rebuttal. Because the challenges are not preserved, the Supreme Court's recent decision in *State v. Perez*, 373 Or 591, 568 P3d 940 (2025), supplies the framework for our review:

> "In a plain-error challenge based on the prosecution's purportedly improper arguments to the jury, *** the defendant [must] establish that it is obvious and beyond reasonable dispute that the prosecutor's statements were improper, whether because they misstated the law, adversely commented on the defendant's exercise of a constitutional right, referenced matters not in evidence, or otherwise could only be understood to have urged the jury to draw an impermissible inference."

*Id.* at 615.

If a defendant demonstrates that a prosecutor's statements meet that standard, that provides grounds for reversal only if "the comments rendered the trial unfair, which *** requires the defendant to show that any curative instruction by the trial court would not have been effective." *Id.* at 606. For the reasons that follow, we conclude that it is "obvious and not reasonably in dispute" that at least some of the prosecutor's statements were impermissible, that a curative instruction could not adequately redress those statements, and that the trial court would have been required to grant a mistrial had defendant requested it.

Defendant asserts that the following prosecutorial statements warrant reversal on plain-error review:

"[PROSECUTOR:]    The defense has absolutely no obligation whatsoever to put on any case. The state has to present their evidence to you, and the defense can stand up and say, 'We rest. We have nothing.' And you are not allowed to hold anything—their failure to present evidence to you—against them in any way.

"But once they present evidence, you are entitled to say, 'Well, I don't know. I mean it would've been nice to hear from this person or that person.' Well, I mean defendant says, 'I had this head injury and my—and my memory started coming back to me.' Really? I mean how about any medical records which would have suggested that to be true? He was taken to the hospital. He was cleared by medical staff. There's no diagnosis of a concussion, no diagnosis of a head injury. There is no head trauma expert who has testified to you that that is a common occurrence, in fact, is shockingly absent in this case.

"Your verdict has to be based on the evidence in the courtroom, and only the evidence in this courtroom. You can't consider, well, gosh, I wonder what was in (indiscernible) lab report? They're not in front of you. Statements made to—other statements made to law enforcement, or statements made [to] the grand jury, or any other statement that you heard about or referenced, they're not in front of you, unless they are, right?

"The defense is represented by counsel, who has had a chance to review every single one of those documents. And I can assure [you] if there was something in there that would exonerate him or exculpatory to (indiscernible) client, it would be before you. But it's not. So you can't speculate what there might be."

Defendant argues that above statements were improper because (1) they erroneously suggested to the jury, among other things, that (a) "the state was relieved of the sole burden of proof once defendant chose to testify," and (b) "misinformed the jury about the nature of the beyond a reasonable doubt standard by stating that the jury was not permitted to consider the absence of evidence in assessing whether the state had met its burden"; and (2) the statements otherwise impermissibly commented on defendant's failure to produce certain evidence.

We agree that it is obvious and not reasonably in dispute that the prosecutor's comments were impermissible.

First, subject to exceptions not implicated here, "it is improper for a prosecutor to comment on a defendant's failure to present evidence at trial because such comments 'may reasonably cause the factfinder to misapprehend and misallocate the burden of proof.'" *State v. Dumdei*, 337 Or App 246, 251, 562 P3d 634, *rev den*, 373 Or 736 (2025) (quoting *State v. Spieler*, 269 Or App 623, 641, 346 P3d 541 (2015)); *State v. Smith*, 334 Or App 89, 94-95, 554 P3d 817 (2024),*rev den*, 374 Or 143 (2025) (stating the same principle).[1] This principle applies regardless of whether a defendant elects to present evidence by testifying or otherwise. As we explained in *Smith*,

> "Remarks concerning evidence that a defendant has or has not presented can sometimes fall on either side of a thin line. On one side, it is permissible for a prosecutor to argue that a defendant's evidence is unconvincing, and that the jury should not be persuaded by it. On the other side of that thin line, it is impermissible for a prosecutor to argue that a defendant was required to or had a burden to present corroborating evidence, evidence that contradicts the state's evidence, or, indeed, any evidence at all."

334 Or App at 92.

Second, it is impermissible for a prosecutor to "refer to information outside the evidentiary record." *State v. Burton*, 373 Or 750, 760, 571 P3d 736 (2025) (collecting cases). This limitation on argument ensures that a jury's decision is based on the evidence admitted at trial and does not rest on speculation about matters not properly before the jury. *Id*. at 760-62. Relatedly, a prosecutor "may not suggest that they are aware of evidence that was not presented to the jury—thereby creating an invitation for the jury to speculate." *Id*. at 761-62; *see Perez*, 373 Or at 619 (Bushong,

---

[1] We have recognized that a prosecutor may comment on a defendant's failure to present evidence to support a claimed affirmative defense or "when the defense has raised an issue on which the defendant bears the initial burden of production but fails to present any evidence." *State v Arena*, 336 Or App 291, 294, 560 P3d 757 (2024); *see also Perez*, 373 Or at 619 (Bushong, J., concurring) ("[A] prosecutor should never argue or suggest to the jury that the defendant has the burden of proving anything, except when the law places the burden of proving an affirmative defense on the defendant.").

J., concurring) (stating that a prosecutor "should never suggest or insinuate that there is more evidence of the defendant's guilt than what the prosecutor has presented at trial" because doing so "amounts to either impermissible vouching, an implicit reference to facts not in evidence, or both.").

In view of those principles, it is plain and not reasonably in dispute that the prosecutor's remarks were not permissible.

Initially, the prosecutor's statements that defendant was not required to present evidence "[b]ut once they present evidence, you are entitled to say, 'Well, I don't know. I mean it would've been nice to hear from this person or that person[,]'" are not meaningfully distinguishable from those we deemed improper in *Smith*. There, the prosecutor noted that the defendant testified at trial and argued that "while it is my burden to prove to you beyond a reasonable doubt this happened, the defense has chosen to put on evidence, and they've chosen to put on a defense, right." The prosecutor argued that the choice to present a defense meant that defendant had taken on a burden of persuasion: "on some level, if they want you to buy that, we call that a burden of persuasion, right." *Smith*, 334 Or App at 90. Addressing the permissibility of the prosecutor's statements, we concluded that those comments represented "a misstatement of a foundational principle of criminal law, that a criminal defendant is presumed innocent and, except in limited circumstances not relevant here, has no burden of production or persuasion." *Id*. at 94.

Next, the prosecutor's statement that "[t]here is no head trauma expert who has testified to you that [defendant's self-described head injury] is a common occurrence, in fact, is shockingly absent in this case" contravened both principles identified above. It directly commented on defendant's failure to call a trauma expert as a witness. In addition, it rested on facts not in evidence. Specifically, there was no evidence presented that would support a reasonable inference that the lack of testimony from a trauma expert was a "shocking[]" absence within the confines of a criminal case. That no such evidence was present is unsurprising, of course, in view of (a) the foundational criminal law principle that a criminal defendant generally has no burden of

production or persuasion; and (b) evidence of how much or how little evidence criminal defendants might present in other cases is not relevant to the question whether the state has sustained its burden of proof with respect to a particular criminal defendant. On the latter point, the prosecutor's personal commentary on the "shocking" lack of testimony, because it was unsupported by evidence, crossed the line into vouching because it invited the jury to take the prosecutor's word for how weak defendant's evidence was.

Finally, the prosecutor's concluding statement violated the second principle discussed above. That defense counsel "had the chance to review every single one of those documents," was not a fact in evidence. And the argument that "I can assure [you] that if there was something in there that would exonerate him or exculpatory to [] client, it would be before you," not only rested on facts not in evidence (that defense counsel had made a choice not to introduce evidence because it was not exculpatory), it impermissibly invited the jury to speculate that evidence not introduced did not support the defense case. Although the prosecutor also stated that the jury could not speculate about what the evidence might be, in context, that exhortation ran one direction, urging the jury not to speculate that there was evidence favorable to the defense, in light of the prosecutor's assurances that defense counsel would have presented any such evidence in the files. Beyond that, the prosecutor's reference to possible exonerating or exculpatory evidence risked misleading the jury under the circumstances of this case. That is because the key issue was self-defense and the prosecutor's reference to the absence of exonerating or exculpatory evidence misleadingly suggested that defendant bore a burden of producing evidence to support self-defense, even though it was the state's obligation to prove beyond a reasonable doubt that defendant had not acted in self-defense.

The next question on plain-error review is whether a curative instruction would have been adequate to address the prosecutor's improper remarks or if, instead, the trial court would have been required to grant a mistrial if defendant had requested it. *Dumdei*, 337 Or App at 252-53; *Smith*, 334 Or App at 94-95. In evaluating whether a curative instruction

would have been adequate, we consider whether the prosecutor's misstatements "called to mind bias, emotions or other improper bases for deciding the case," and whether the prosecutor's misstatement would have been a "potentially easy-to-dispel misstatement." *Smith*, 334 Or App at 95. Applying those standards in *Dumdei* and *Smith*, we concluded that a curative instruction would have been adequate to address the prosecutors' misstatements in those cases because the statements did not appeal to the jurors' emotions or urge jurors to decide the case on an otherwise improper basis and, moreover, could be redressed simply with a correct statement of law. *Dumdei*, 337 Or App at 253-55; *Smith*, 334 Or App at 95.

Here, by contrast, the prosecutor's misstatements are not ones that would be easy to dispel with a curative instruction. The state posits otherwise, suggesting that, if defense counsel had objected, "whatever possible prejudice that could have resulted could have been dissipated completely by a cautionary instruction reiterating that the state has the burden to prove guilt beyond a reasonable doubt and that jurors cannot infer guilt based on defendant's choice to present additional evidence."

A cautionary instruction like the one proposed by the state undoubtedly would have been sufficient to address many types of prosecutorial misstatements. We have recognized as much in *Dumdei* and *Smith*, where we concluded curative instructions could adequately redress the harm caused by the prosecutors' improper arguments, which bore similarities to the prosecutor's arguments here. Under these circumstances, though, the type of generic instructions proposed by the state would not, and could not, adequately address the multiplicity of misconceptions that the prosecutor's statements improperly injected into the case. The prosecutor's statement that evidence was "shockingly absent," standing alone, strikes us as nearly impossible to cure with an instruction; the prosecutor was, in essence, telling the jury that it should be shocked by a foundational principle of criminal law.

For the reasons stated, we conclude that the identified remarks by the prosecutor were improper and that, had defendant moved for a mistrial based on them, the trial court would have abused its discretion by denying it. We therefore

reverse and remand for a new trial. As noted above, in view of this disposition, we need not and do not reach the balance of defendant's assignments of errors, which may not recur on remand.[1]

Reversed and remanded.

**AOYAGI, P. J.,** dissenting.

I disagree with the majority that prosecutorial misstatements in closing argument to which defendant did not object were incurable in nature, such that his convictions should be reversed on plain-error review. Accordingly, I dissent.

On appeal, defendant challenges seven statements in the prosecutor's closing argument to which his trial counsel did not object but which he now claims were so prejudicial and incurable as to deny him a fair trial and require a mandatory mistrial. I agree that two of the statements were improper under existing case law regarding burden-shifting, including the statement about the "shockingly absent" trauma expert that is the main focus of the majority opinion.[2] However, I disagree that no jury instruction could have cured the impropriety and that the trial court's only choice was to declare a mistrial.

The *Chitwood* standard for a new trial based on unpreserved claims of prosecutorial misconduct is well established at this point. *See State v. Perez*, 373 Or 591, 568 P3d 940 (2025); *State v. Chitwood*, 370 Or 305, 314, 518 P3d 903 (2022). As recently summarized:

"In the specific context of prosecutorial misconduct in closing argument, for there to be plain error, it must be 'beyond dispute that the prosecutor's comments were so prejudicial as to have denied defendant a fair trial.' *Chitwood*, 370 Or at 312 (internal quotation marks omitted). That is, 'a defendant asserting plain error must demonstrate that

---

[1] Defendant assigns error to the trial court's admission of evidence of prior convictions, but that assignment of error rests on a decision of ours that was reversed by the Supreme Court. The Supreme Court's decision establishes conclusively that the trial court did not err. *State v. Aranda*, 372 Or 363, 550 P3d 363 (2024).

[2] That statement is the subject of the ninth assignment of error. The other statement is the subject of the seventh assignment of error.

the prosecutor's comments were so prejudicial that an instruction to disregard them would not have been sufficiently curative to assure the court, in its consideration of all the circumstances, that the defendant received a fair trial.' *Id.* '[P]rosecutorial statements that were improper but *curable* are not an appropriate subject of plain-error review, because, in such circumstances, the defendant was not denied a fair trial.' *State v. Durant*, 327 Or App 363, 365, 535 P3d 808 (2023) (emphasis in original). 'That is important because, "[g]enerally, a proper jury instruction is adequate to cure any presumed prejudice from a prosecutor's misconduct."' *State v. Babcock*, 327 Or App 358, 360, 535 P3d 345 (2023) (quoting *State v. Davis*, 345 Or 551, 583, 201 P3d 185 (2008), *cert den*, 558 US 873 (2009))."

*State v. Adair*, 340 Or App 305, 306-07, 571 P3d 202 (2025) (brackets and emphasis in original).

Here, I am unpersuaded that the two improper statements were incurable in nature. We regularly rely on trial courts to cure all sorts of errors in jury trials with appropriate instructions tailored to the specific circumstances. *See State v. Arena*, 336 Or App 291, 303, 560 P3d 757 (2024) (Aoyagi, P. J., dissenting) (cataloguing cases). And we generally presume that jurors will follow their instructions—including those crafted to address prosecutorial misconduct—unless something about the particular situation creates an "overwhelming probability" that the jurors will be incapable of doing so. *State v. Wellington*, 332 Or App 44, 49, 548 P3d 146, *rev den*, 373 Or 81 (2024) ("[W]e generally assume that a jury has followed a court's curative instruction unless there is an overwhelming probability that the jury was incapable of following the instruction." (Internal quotation marks omitted.)). As the Supreme Court has put it, "Generally, a proper jury instruction is adequate to cure any presumed prejudice from a prosecutor's misconduct. To be sure, however, statements or testimony that the jury is instructed to disregard can be so prejudicial that, as a practical matter, the bell once rung, cannot be unrung by such an admonishment." *Davis*, 345 Or at 583 (internal citation and internal quotation marks omitted).

I appreciate the majority's efforts to explain why the trauma-expert statement in this case was a bell that

could not be unrung, but I am unpersuaded. Both of the improper statements were contained in a lengthy closing argument, the duration and other content of which likely blunted their effect. Moreover, an argumentative statement by a lawyer regarding the legal rules governing trial seems especially susceptible to being cured by a thoughtful trial judge if given the opportunity. It does not inject facts into the case that the jury should not know, nor does it make an emotional appeal that a juror would be hard pressed to overcome despite best efforts.

Even if a statement is not "easy" to cure, *see* 342 Or App at 635, it may nonetheless be curable and thus not require a mandatory mistrial, which, in my view, is the situation here. *See Perez*, 373 Or at 605 (explaining that, to qualify as plain error, the improper statement must have required a mistrial "because *no* curative instruction would have been effective" (emphasis added)). One of the downsides of addressing prosecutorial misconduct in closing argument in an unpreserved posture—as we have been called to do so frequently since *Chitwood*—is that we do not get the benefit of the trial court's on-the-ground assessment of curability, nor do we hear what curative instruction an experienced trial judge might have crafted. I fear that, in that void, our own failure of imagination sometimes leads us to conclude that a misstatement was incurable.

Because I am unpersuaded that *incurable* prosecutorial misconduct occurred in this case, I would reject defendant's plain-error arguments, and I would affirm his convictions.[3] I therefore respectfully dissent.

---

[3] I agree with the majority's rejection of the first and second assignments of error, regarding denial of defendant's motions for a judgment of acquittal, and the third and fourth assignments of error, regarding admission of the fact of certain prior convictions. *See* 342 Or App at 629-30, 636 n 2. I would reject defendant's fifth assignment of error, which is his only preserved claim of error on prosecutorial misconduct, because defense counsel expressly asked the trial court not to give a curative instruction if it would not give the specific one that defense counsel wanted, and the court reasonably declined to give that one given its potential to prompt jury speculation. I would reject the sixth, eighth, tenth, eleventh, and twelfth assignments of error, which raise unpreserved claims of prosecutorial misconduct in closing argument, because, in context, the statements were not "obviously improper." *Perez*, 373 Or at 615. Finally, as stated in the text, I would reject the seventh and ninth assignments of error based on curability and the resulting lack of plain error.