No. 320 April 22, 2026 677

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MICHAEL LEE BRINSTER,
aka Mike Brinster,
*Defendant-Appellant.*

Deschutes County Circuit Court
20CR47392; A180300

Alicia N. Sykora, Judge.

Argued and submitted February 12, 2025.

Joel C. Duran, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Rolf C. Moan, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

SHORR, P. J.

Affirmed.

Pagán, J., concurring.

**SHORR, P. J.**

Defendant appeals from a judgment of conviction for one count of fourth-degree assault, ORS 163.160(2), and one count of strangulation, ORS 163.187.[1] He raises five assignments of error, arguing that the trial court plainly erred when it failed to *sua sponte* declare a mistrial based on several improper statements made by the prosecutor during rebuttal closing argument. We affirm.

The charges in this case arose out of a physical altercation in Bend, Oregon, where defendant, a bus driver, forcibly removed a passenger, A, from his bus for not wearing shoes. At the subsequent jury trial, defendant argued that he acted in self-defense after A threatened him with a knife. The jury rejected that defense and found him guilty of fourth-degree assault and strangulation.

On appeal, defendant challenges as plain error five distinct aspects of the prosecutor's rebuttal closing argument, which we address in turn. We begin with defendant's first assignment of error in which he challenges prosecutorial statements that he claims impermissibly invited the jury to speculate that he assaulted A because of racial bias. As relevant to that assignment, defendant is White and the passenger he removed from the bus, A, is Black. The state did not allege that the incident was racially motivated, nor is there any direct evidence in the record of a racial motivation. In his first assignment of error, defendant challenges the following statements made by the prosecutor:

"Now, also ask yourself, is it likely that a 60-year-old doctor would have been assaulted on that bus? Probably not.

"* * * * *

"[A] told you why he spat on the defendant. He was angry. He felt disrespected.

"First off, I don't support spitting on anyone, okay? Probably figured that out, but important to say. But why don't you come take a little walk with me, right? Let's walk a mile in [A's] shoes.

---

[1] The jury acquitted defendant of one count of menacing.

"[A] is a black man in a white town. He dresses differently than most people who live here do. His hair is different than most people here. His mannerisms and style are different than most people who live here.

"* * * * *

"[A is] a man who's struggling. He's struggling with life based on how he's been treated. We all struggle sometimes, right, either financially or with our health or with issues at work or with the loss of a loved one.

"It's reasonable to conclude though that [A] struggles more in this town than most of us do. There is no greater evidence of [A's] struggles [than] what happened to him on August 20th, 2020, on that bus.

"* * * He was kicked off the bus because he had no shoes. The defendant told him that he needed shoes to ride the bus; that's not true.

"Do you think the defendant would have applied that rule to a mom and her daughter who had just left the Juniper rec center? The daughter had been swimming and in her bathing suit and she didn't have her shoes on?

"* * * * *

"You think the defendant would have been threatened if instead of [A] there was a 50-year-old farmer who was an NRA member and carries a gun with him, legally, lawfully, like [A] was carrying that knife lawfully?"

Defendant did not object at trial to the foregoing portion of the prosecutor's rebuttal closing argument and requests that we review his claim of error for plain error. He argues that the prosecutor's statements impermissibly implied that the assault was racially motivated, which was not supported by the evidence. In addition, he claims that the statements suggested that A was treated unfairly in the community because of his race and were therefore impermissible because they were "calculated to incite the emotions * * * of the jurors and urged the jurors to convict defendant to protect community values." In response, the state contends that the prosecutor's statements did not assert that defendant was a racist or that the charged assault was racially motivated. The state highlights that the prosecutor only referred to race once and focused on the victim's

race-neutral experiences. The state argues that the prosecutor's hypotheticals about how defendant might have treated others in the community (a 60-year-old doctor, a girl in a bathing suit accompanied by her mother, or a 50-year-old farmer who was an NRA member) did not refer to race at all.

The Supreme Court's recent decision in *State v. Perez* clarified the framework for our review of a plain error challenge to a prosecutor's allegedly improper arguments. 373 Or 591, 604-05, 568 P3d 940 (2025). A defendant asserting such a challenge must still meet the general requirements of plain error review; the defendant must "prove that the claimed error is one of law, is obvious and not reasonably in dispute, and appears on the record." *Id.* at 604. To satisfy the requirement that the alleged error is "one of law," a defendant must prove that the prosecutor's comments were not just improper, but "so egregious" that they required a mistrial as a matter of law or "[i]n other words * * * so prejudicial that an instruction by the trial court to the jury to disregard the comments would not have been sufficiently curative to ensure that the defendant received a fair trial." *Id.* at 605 (internal quotation marks omitted).

In this case, even assuming that the prosecutor's statements were improper, which is an issue we do not decide, "they do not meet the standard for plain-error review because they could have been adequately addressed by a curative instruction." *State v. Carlson*, 339 Or App 742, 745, 568 P3d 992 (2025). Generally, "a proper jury instruction is adequate to cure any presumed prejudice from a prosecutor's misconduct." *State v. Chitwood*, 370 Or 305, 311, 518 P3d 903 (2022). Had defense counsel immediately objected to the prosecutor's statements, the trial court would have had the opportunity to strike the statements, remind the jury to rely only on evidence presented, and instruct the jury not to consider how defendant might have treated other hypothetical individuals for any reason. We are not persuaded that the jury could not have followed that instruction. *See State v. Wellington*, 332 Or App 44, 49, 548 P3d 146, *rev den*, 373 Or 81 (2024) (assuming that a jury has followed a court's curative instruction unless there is an overwhelming probability that the jury was incapable of doing so); *see*

*also State v. Settlemier*, 333 Or App 179, 181-82, 551 P3d 995 (2024), *rev den*, 373 Or 212 (2025) (improper but curable for the prosecutor to encourage the jury to determine the defendant's guilt or innocence based on the prosecutor's characterization of the defendant's conduct as evil). Moreover, the trial court here instructed the jury on the elements of the offenses; that it must base its verdict on the evidence; to not decide the case on guesswork, conjecture, or speculation; that the lawyers' arguments are not evidence; and to not allow personal biases, conscious or unconscious, to influence their decision-making. Those instructions helped counter any improper implications and we must presume that the jury followed them. *Settlemier*, 333 Or App at 182. Thus, because any prejudice as a result of the statements could have been addressed by the trial court without requiring a mistrial, defendant has failed to establish legal error requiring a remedy of reversal.

We turn now to defendant's remaining assignments of error, challenging other aspects of the prosecutor's rebuttal closing argument. Defendant's second assignment of error challenges the prosecutor's statement that the victim "didn't trust the jury to do the right thing." In context, the prosecutor appears to be referencing the victim's testimony expressing general distrust of the justice system and that he "know[s] no one in this room gives a shit." It is not obvious that the prosecutor's statement was an improper exhortation to the jury to do the right thing by convicting defendant rather than a reasonable description of the victim's testimony.

Defendant's third assignment of error challenges the prosecutor's statement that defendant could have subpoenaed previous versions of the bus rules but failed to do so because it would not have helped. Defendant objected to that statement, and the trial court gave a curative instruction, reminding the jury that the state had the burden of proof and instructing the jury to disregard the prosecutor's statements. Even if the prosecutor's statements could be characterized as shifting the burden of proof, we have explained that such statements are improper but do not meet the standard for plain-error review if they can be adequately

addressed by a curative instruction. *State v. Dumdei*, 337 Or App 246, 253, 562 P3d 634, *rev den*, 373 Or 736 (2025); *see also State v. Martinez*, 335 Or App 103, 107, 557 P3d 556 (2024), *rev den*, 373 Or 282 (2025) (prosecutor's statement that "created the realistic possibility of confusing the jury as to the burden of proof" was improper but curable). Defendant has not persuaded us that the instruction given by the trial court in this case was insufficient to cure any potential prejudice.

In defendant's fourth assignment of error, he argues that the prosecutor impermissibly commented on his right not to testify. In discussing defendant's claims of self-defense, the prosecutor asked, "Did [defendant] think what he did was okay? Well, we don't know." We disagree with defendant that the prosecutor's statement was a plainly impermissible comment on defendant's exercise of a constitutional right. Read in context, the jury could reasonably have understood the comments as a reference to whether defendant subjectively believed his use of force was reasonable, as relevant to his claim of self-defense. *See Perez*, 373 Or at 607 (explaining that if "there was more than one way that the jury could have understood each of those comments, not all of which are impermissible, we cannot conclude that they were plainly improper"). The prosecutor did not dispute that defendant possessed that subjective belief and his other comments accurately told the jury that they were free to conclude that defendant believed his use of force was reasonable. It is not obvious and beyond dispute that the prosecutor's statement was improper.

In his fifth assignment of error, defendant argues that several statements made by the prosecutor constituted impermissible vouching. We have previously explained that a prosecutor may make credibility arguments, provided that their argument is grounded in evidence in the record. *State v. Slay*, 331 Or App 398, 404, 545 P3d 768, *rev den*, 372 Or 560 (2024). Defendant first challenges the prosecutor's statements that one of the witnesses for the state was not lying about the lack of shoe requirement and that it was "not true" that there was a shoe requirement to ride the bus. In context, it appears that the prosecutor was urging the jury

to find, based on the witness's testimony and the record as a whole, that there was no official board-certified requirement to wear shoes on the bus. The statements were not improper, or at least not plainly so. *See State v. Smith*, 340 Or App 636, 640, 571 P3d 1131, *rev den*, 374 Or 437 (2025) (not obviously improper for prosecutor to suggest that it was unlikely that a witness was lying because it "was grounded in the testimony that the jury heard"); *Carlson*, 339 Or App at 744 (a prosecutor may argue that the jury can infer a witness's credibility based on the evidence and testimony). Defendant also challenges two statements where the prosecutor described defendant either as "dishonest" or "being dishonest" about the facts. The prosecutor was referring to two inconsistencies between defendant's interview with the police and the video recording of the incident, and encouraged the jury to review the video that would demonstrate defendant's dishonesty in those two particular instances. Soon after the second reference to dishonesty and right after the prosecutor's rebuttal closing, the trial court, *sua sponte*, asked to meet with the attorneys. After an off-the-record meeting with counsel, the court correctly instructed the jury that the prosecutor may argue that a person is credible based on the evidence but cannot vouch for the person by "injecting his personal opinion of a person's credibility." The court then noted that the "prosecutor has referenced defendant as being dishonest" and instructed the jury to "disregard any of the prosecutor's personal opinions of a person's credibility." Defendant did not object to that instruction as insufficiently curative and does not explain to us why a mistrial was still required following that instruction. We conclude that the court did not plainly err when, after meeting with counsel, it chose to correctly instruct the jury as it did and not declare a mistrial. *See also State v. Stone*, 340 Or App 724, 738, 571 P3d 1140 (2025) (concluding that to the extent that the prosecutor conveyed a personal credibility opinion about a witness, a curative instruction would have cured any prejudice).

    In sum, we conclude that none of the challenged statements meet the requirements for plain error review under *Chitwood* and *Perez* because they were either not improper or could have been adequately addressed by a

curative instruction. Furthermore, because any improper statements could have been cured, we disagree with defendant that the statements, taken together, deprived him of a fair trial and require reversal.

Affirmed.

**PAGÁN, J.,** concurring.

I agree with my colleagues that, ultimately, the statements by the prosecutor do not require a reversal because a curative instruction could have addressed the harm the statements caused, but I differ with the majority's decision not to identify the prosecutor's statements as improper. I would conclude that they are improper, and not simply because they improperly invoke race, but also because the statements were so fundamentally at odds with what we consider appropriate argument on the evidence, regardless of their undertones. I thus concur.

Lost within the majority's adherence to the appropriate standard of review is a failure to address the more fundamental reason that the prosecutor's statements were problematic: they required the jury to speculate as to defendant's motives and were based on evidence that had no independent relevance under OEC 401 to begin with. The error was allowing the victim to testify about his feelings about the justice system without establishing why those feelings were relevant to the proceedings in the first place.

I excerpt one example of the victim's testimony to illustrate the sort of irrelevant grievances he raised. In response to a cross-examination question about whether he was wearing socks, A was unresponsive and eventually stated:

> "I've had friends (indiscernible) disabilities. I've had—I have a lot of blind homies, disabled homies, who were left and just drove past and asked about their disabilities, if they bother to stop for them, and—which is really illegal, you know.

> "It's kind of like not really cool. It's—it's—it's really fucked up. And the only time he gets called out is when it gets so sloppy that, yeah, it becomes an issue, you know.

"But it's like, my – 'Hey, my little brother's a diabetic.' The amount of times there's been arguments, my—for getting on the bus with a service animal, the amount of times that my—my—my legally blind friends have been driven past or given shit because of who (indiscernible) had to jump in front of the bus, the fact that—and that's just the second thing.

"To stop a person from—because maybe it is, oh, just—are having a bad day, and maybe the times where I get actively fucking choked off a bus and then arrested on two felony charges for it, maybe it has alittle bit of sign about how not really correctly run that the [transit system]—what was your question again? Sorry, I forgot."

Putting aside what caused A to provide such an answer, which is itself not relevant to this analysis, the trial court should have *sua sponte* stricken the answer as unresponsive, and, at a minimum, not allowed either attorney to use the unresponsive answer as substantive evidence that could be commented on.

Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401; *see also State v. Turnidge*, 359 Or 507, 511, 373 P3d 138, *cert den* 580 US 1021 (2016) (evidence of defendant's violent political beliefs, such as support for the Oklahoma City bombing, "all logically tended to support to the state's theory" that he had built a bomb). But here, unlike *Turnidge*, A's beliefs about the transit system did not logically advance the state's theory. That is not to say that the relevance of A's grievances or experiences in the city could not be established—such as an explanation for nervousness or inconsistent testimony, or perhaps to explain a particular statement during his exchanges with defendant. But that is not what was done here. To the extent the testimony's relevance was ever established, its admission should not have been used for anything beyond the limited scope of whatever relevance the court found it to have.

But here, the prosecutor took those statements as though they presented evidence the jury should consider when deciding elemental facts that had nothing to do with

whatever the victim may have felt about his treatment in that city or in the justice system. The prosecutor suggested that the victim's feelings about his experiences were relevant to *defendant's* state of mind during the incident. The prosecutor then compounded the prejudice already established by the evidence and the prior argument by suggesting that defendant had a particular motive on that day because of the victim's experiences in the town. In essence, the prosecutor asked the jury to consider whether what happened in this incident was evidence to support the victim's feelings about his treatment in that city, rather than focusing on each element that the state had to actually prove.

We should not lose sight of the fact that, when analyzing closing argument, we may encounter more than just improper invocations of emotion or racial animus. We would do better to encourage litigants to be more mindful of the procedural accuracy of their arguments—not just the undertones and overtones that might accompany them.

I respectfully concur.